(No. 14195.—Judgment affirmed.)

THE PEOPLE *ex rel.* Joe Russell, *et al.* Appellees, *vs.*
IRVING M. GRAHAM *et al.* Appellants.

*Opinion filed February 22, 1922.*

1. SCHOOLS—*legislature has power to determine boundaries of
school districts.* The constitution has left to the General Assembly
to declare what shall constitute a common school education and
what system of free schools will be thorough and efficient, and the
legislature has the power to act directly and create school districts
by general or special acts, or it may prescribe agencies by which
the boundaries of school districts shall be determined.

2. SAME—*when courts may interfere with legislative discretion
in establishing school system.* It is not for the courts to say that
the legislature has acted unwisely in selecting the agencies or meth-
ods which it deems best to carry out the mandate of the consti-
tution for the establishment of a thorough and efficient system of
free schools, and the courts cannot interfere unless the legislature,
or the officers authorized by it, creates a system of free schools
which is not an efficient and thorough system.

3. SAME—*act for community consolidated school districts is not
invalid.* The act of June 24, 1919, for the organization of com-
munity consolidated school districts out of any compact and con-
tiguous territory bounded by school district lines, does not violate
the constitutional mandate for the establishment of a thorough and
efficient system of free schools and does not deprive any children
of the State of the opportunity to receive a good common school
education.

4. SAME—*meaning of the terms "contiguous" and "contiguous
and compact."* The terms "contiguous" and "contiguous and com-
pact," when used with respect to a school district, mean territory so
closely united and so nearly adjacent to the school building that
all the children residing in the district, their ages considered, may
conveniently travel from their homes to the school building and
return in a reasonable length of time and with a reasonable de-
gree of comfort.

5. SAME—*validating act of May 4, 1921, is not a special law
regulating conduct of elections.* The validating act of May 4, 1921,
validating community consolidated school districts established by
authority of elections in which the provisions of the Australian
Ballot law were not observed, does not violate the constitutional
provision against the enactment of special laws for the conduct-
ing of elections, as the legislature may establish school districts

without an election, and the reference in the act to the elections is merely descriptive of the territory to which the act applies.

6. CONSTITUTIONAL LAW—*when a law is general in the constitutional sense.* To be general in the constitutional sense a law need not operate on every person or municipal corporation in the State, but it is sufficient if it is broad enough to operate uniformly in every portion of the State and to embrace within its provisions every person or thing distinguished by characteristics sufficiently important to make them clearly a class by themselves, even though there may be but one member of the class or one place in which the law presently operates.

CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Hancock county; the Hon. WILLIS F. GRAHAM, Judge, presiding.

LEE SIEBENBORN, State's Attorney, (HARTZELL, CAVANAGH, MARTIN & HARTZELL, and SCOFIELD, CALIFF & BELL, of counsel,) for appellants.

O'HARRAS, WOOD & WALKER, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Hancock county denying a motion made by the State's attorney on behalf of the People, on relation of Joe Russell and Bert Biggs, for leave to ·file an information in the nature of *quo warranto* against appellees, whom the petition alleged to be holding and executing, without any warrant or title, the offices·of president and members of the board of education of Community Consolidated School District No. 306, in Hancock county.

The district was organized under the provisions of an act approved June 24, 1919. (Laws of 1919, p. 904.) This act provides that any compact and contiguous territory bounded by school district lines may be organized into a community consolidated school district ·and provides the means for perfecting such an organization. It further pro-

vides that boards of education in such districts shall perform the same duties and exercise the same powers as are imposed and conferred upon boards of education in school districts having a population of not less than 1000 nor more than 100,000 inhabitants, and shall also exercise any and all powers granted to boards of school directors under the provisions of section 121*a* of the School law. In 1909 there was a general revision of the school laws. Sections 123 to 127, inclusive, (Laws of 1909, p. 377,) provide that in all school districts having a population of not fewer than 1000 and not more that 100,000 inhabitants the boards of education shall have all the powers of school directors, be subject to the same limitations, and in addition thereto shall have the power, and it shall be their duty, among other things, "to divide the district into sub-districts, to create new ones, and to alter or consolidate them," and "to apportion the pupils to the several schools." School directors were required by section 114 (Laws of 1909, p. 373,) "to establish and keep in operation for at least six months in each year, and longer, if practicable, a sufficient number of free schools for the accommodation of all persons in the district over the age of six and under twenty-one years, and to secure for all such persons the right and opportunity to an equal education in such schools," and "to assign pupils to the several schools in the district." These sections have been amended several times, but the provisions quoted have been re-enacted in substantially the original form. Section 121*a* of the School law was enacted in 1917. (Laws of 1917, p. 733.) By this act adjoining school districts may be consolidated by a majority vote of the voters residing in each district. The board of directors of the consolidated district is given the same powers and is required to perform the same duties as boards of directors under the general School law, and in addition thereto it is required to provide free transportation for pupils residing at a distance from the school site.

It is contended, first, that the act of June 24, 1919, is unconstitutional for the reason that it does not "provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education," in accordance with the mandate of section 1 of article 8 of the constitution of 1870. This provision was not in the constitutions of 1818 and 1848, nor was there a similar provision in either of those constitutions providing for a system of free schools. On the same day that the convention adopted the constitution of 1818 it adopted an ordinance by which it accepted certain propositions offered to the convention by Congress in the Enabling act, authorizing the people of Illinois to form a State constitution and State government. Among the propositions accepted was one setting aside and granting to the State section 16 in every township for the use of the inhabitants of such township for the use of schools, and another reserving three per cent of the net proceeds from the sale of lands lying within the State, to be appropriated by the legislature for the encouragement of learning, one-sixth of which proceeds was required to be used exclusively for the benefit of a college or university. The following year there was some legislation concerning the preservation of the public school funds, but it was not until 1825 that an effort was made to provide for a system of free schools. These schools were to be supported by voluntary contributions in cash or good merchantable produce, and the code was wholly inefficient to accomplish the purposes for which the system was established. The desire of these early law-makers to establish a system by which their children might receive a good common school education is best expressed in the preamble of the code, where it is said: "Believing that the advancement of literature always has been and ever will be the means of developing more fully the rights of man, that the mind of every citizen in a republic is the common property of society and constitutes the basis of its strength

301—29

and happiness, it is therefore considered the peculiar duty of a free government like ours to encourage and extend the improvement and cultivation of the intellectual energies of the whole."

The first effective code establishing a system of free schools in this State appears in the Revised Statutes of 1845 as chapter 98. This act provided for the distribution of the State school fund among the several school districts, and provided that the voters of the different school districts might authorize, by a majority vote, the levying of a tax for school purposes in their respective districts. In 1857 an act to establish and maintain a system of free schools was adopted, and it was by far the most elaborate in its details of any act on the subject passed by the legislature up to that date. It seems to have been the groundwork for all subsequent legislation respecting schools. There was a general revision of the school laws in 1865, in 1872 and in 1889, and, as we have said, in 1909. Since 1845 the congressional township has been the unit of the school system, and the school business of the township has been done by three trustees elected by the legal voters of the township. These trustees were given authority by the act of 1845 to divide the township into school districts suited to the wishes and convenience of a majority of the inhabitants of such districts, and that power has continued in them through all the revisions down to date. They have had the authority, when petitioned by a majority of the legal voters of the district, in their discretion to divide a district into two or more districts, to consolidate two or more districts into one district, to detach territory from one district and attach the same to an adjacent district, to create a new district from territory belonging to two or more districts, to create a new district by dividing the territory of an existing district, and to change the boundaries of districts,—and this authority is carried into the latest revision of the School law. (Laws of 1909, p. 354.) The law

has provided different methods at different times for making changes in districts and the boundaries thereof, but the law prior to 1919 has always required that such changes should be initiated by a majority of the legal voters of the district or districts affected.

The act of 1919, under which the district under consideration is organized, makes a radical departure from the methods heretofore provided for the consolidation of school districts, and provides a method of consolidating districts without the consent of a majority of the legal voters of each district affected. Under this act a populous district may seize and destroy a smaller district or several smaller districts against their unanimous vote, if the larger district can cast a vote favorable to consolidation that is larger than the combined vote of the smaller districts. A village of a few hundred or a city of several thousand population can annex to itself for school purposes all the school districts for miles around without consulting the wishes or convenience of the residents of the surrounding districts. The wisdom or justice of such legislation is not a question for the courts. The courts are concerned only with the question of the legislative power to enact it.

The section of the constitution hereinbefore quoted is a command to the General Assembly to provide a thorough and efficient system of free schools, and the only limitation placed on the broad and far-reaching powers inherent in the State to provide a system of free schools is the requirement that the system shall be one whereby all the children of the State may receive a good common school education. The constitution has not provided the mode by which the thorough and efficient system of free schools required to be provided shall be organized nor the officers by whom its affairs shall be administered and directed. It is left to the General Assembly to declare what shall constitute a common school education and what system of free schools will be thorough and efficient. The legislature has the

power to act directly and create school districts by general or special acts, or it may prescribe agencies by which the boundaries of school districts shall be determined. It is not for the courts to say that the legislature has acted unwisely in selecting the agencies or methods which it deems best to carry out the mandate of the constitution, and the courts cannot interfere unless the legislature, or the officers authorized by the legislature to act in its stead, have, as a matter of fact, created a system of free schools which all reasonable men must agree is not an efficient and thorough system, as those terms are commonly and generally understood. The act under consideration does not provide for a system of free schools that is not thorough and efficient, nor does it provide for a system that will deprive the children of the State of the opportunity to receive a good common school education. The act is not unconstitutional.

It is next contended that the district in question is void for the reason that it is not contiguous and compact, and that this particular district deprives some of the children of the district of the opportunities of a common school education. The petition alleges that the territory composing the district is not compact and contiguous, is irregular in boundaries, abnormal in size, impracticable in extent and operation, incongruous in form, shape, social relations, business associations and community spirit; that there is no central point or community center accessible from all portions of the district; that a large part of the territory of the district is removed from any central point a distance of from three to six miles; that large numbers of pupils residing in the district reside long distances from any central point; that their only means of access to any central point where the site of the school may be established is by public roads which for long periods of the school year are practically impassable, and that it will be practically impossible to transport pupils from remote parts of said territory to any central point in the district; and that all the children

in the district will not have equal opportunities, advantages and facilities for a common school education. The district is formed by the consolidation of common school districts numbered 176, 184, 185, 187 and 188. The village of Denver is located in what was common school district 188. District 187 is immediately east of 188 and district 176 is immediately west of 188. Districts 184 and 185 lie side by side and are immediately north of district 188. The south line of the consolidated district is eight and one-half miles long and its greatest width north and south is four miles. Denver is the only village located within the consolidated district, and it is one-half mile north of the south line of the consolidated district and half-way between the east and west boundary lines of the district. Affidavits in support of the petition show that certain children live within the district at a distance of six and one-half miles from Denver by the public road, that the roads are rough and hilly, and that Bear creek, which they would have to cross, at times overflows its banks and floods a part of the road, making it impossible to cross the creek.

We have said with respect to community high school districts in *People* v. *Young,* (*ante,* p. 67,) and in *People* v. *Kirkham,* (*ante,* p. 45,) that the term "contiguous" or "contiguous and compact," when used with respect to a school district, must mean that the territory is so closely united and so nearly adjacent to the school building that all the children residing in the district, their ages considered, may conveniently travel from their homes to the school building and return in a reasonable length of time and with a reasonable degree of comfort. What we have said there applies with equal force to community consolidated school districts. In both acts the legislature must have used the term "community" advisedly. We have discussed this term fully in the two opinions cited and there is no reason for repeating the discussion here. The principles we announced in those decisions are not new and are not difficult

of application. The courts will not look with favor upon frivolous objections, based on imaginary ills. The administration of the school system, like the administration of all systems designed for the benefit of the public at large, requires the application of common sense, as well as established law, in order to carry out the purpose of the mandate of the constitution. It is, of course, impossible to provide a system of free schools which will place a school house at a point that will be equally accessible to every prospective pupil, and it will also be equally impossible to build a school house on each side of every creek that may occasionally overflow and of every hill that may occasionally present difficulties of transportation. Most of the allegations of the petition sought to be filed in this case state no facts but are mere conclusions of the pleader. It is said that the district is abnormal in size, impracticable in extent and operation, incongruous in form, shape, territory, social relations, business associations and in community spirit, and that there is no central point or community center accessible from all portions of the district, but there are no allegations of fact from which these conclusions legitimately arise. The board of education is required to furnish free transportation to those pupils residing at a distance, and, from all that appears by the petition sought to be filed, the children can be conveniently conveyed to any central point where the voters of the district decide that the school shall be located. The district is not void for the second objection urged.

It is further contended that the organization of the district is void for the reason that the election held for the purpose of organizing the district and electing a board of education was not held in accordance with the provisions of the Australian Ballot law. This objection would be fatal were it not for the effect of a curative act approved by the General Assembly May 4, 1921, which provides: "That in all cases where a majority of the inhabitants, regardless of

sex, of any contiguous territory bounded by school district lines, voting on the proposition, having voted at any election called for the purpose by a county superintendent of schools in favor of the organization of such territory into a community consolidated school district, and when at a subsequent election similarly called and held a board of education has been chosen for such district each such election is hereby made legal and valid and such territory is hereby declared legally and validly organized and established as a community consolidated school district and a valid and existing school district and body politic and corporate of the State for the purpose of establishing and maintaining a community consolidated school," etc.    (Laws of 1921, p. 796.)    This statute is in substantially the exact words of the curative act of 1917, passed to legalize the organization of certain high school districts, the language being changed only so far as to make the act applicable to cases arising under the act providing for the organization of community consolidated school districts.    That act was held to be a valid enactment, effective to legalize the organization of the high school district to which it referred in *People* v. *Madison,* 280 Ill. 96, and many decisions subsequent thereto.    The same effect was given to similar acts for legalizing the organization of community high school districts, passed in 1919, (*People* v. *Edwards,* 290 Ill. 464,) and in 1921.    (*People* v. *Opie, ante,* p. 11.)    From the description of the district in question set forth in the petition and from the plat thereto attached it is clear that the district comes within the terms of the curative act hereinbefore quoted.    Granting, but not deciding, that the legislature was without power to declare a void election valid, it is not essential to the curing of the defects in the organization of this district that the elections be declared valid. This court has repeatedly held that the legislature may provide for the organization, consolidation or division of school districts, fix their boundaries and afterwards change them,

as it deems best for the public interests. It might by a separate act have described the territory embraced within the district in question by section numbers and subdivisions and then have declared this special district to be a valid school district. Instead of doing this the legislature passed a general act declaring all school districts coming within the description set out in the act to be legally organized, and the references to the attempts to hold elections must be regarded as descriptive of the territory to which the act applies. This court has so often passed on the identical questions presented that it seems unnecessary to further discuss them, but it is said that one of the questions presented by this curative act is different from any question heretofore presented, and so we have concluded to consider that question at some length.

It is said that the act violates section 22 of article 4 of the constitution, which prohibits the General Assembly from passing local or special laws in any of the cases enumerated therein, among which are laws providing for the opening and conducting of any election or designating a place of voting. The act in question does not purport to be an election law, nor does it purport to provide for the opening and conducting of an election or the designation of a place for voting. It merely establishes a school district by using a description including the district in question. So far as this record shows, no other community consolidated school district was ever organized under any law providing for the opening and conducting of elections in this State. This may be the only district in the State, so far as the consideration of this record is concerned, that is embraced within the terms of the act, but that would not make the law a special law within the meaning of the constitution. A law is general, in the constitutional sense, which applies to and operates uniformly on all members of any class of persons, places or things requiring legislation peculiar to itself in matters covered by the law. (25 R. C. L. 815; *Perkins* v.

*Cook County Comrs.* 271 Ill. 449; *Chicago, Burlington and Quincy Railroad Co.* v. *Doyle,* 258 id. 624; *Douglas* v. *People,* 225 id. 536.) Laws are general and uniform, not because they operate on every person or municipal corporation in this State, for they do not, but because they operate on every person who or municipal corporation which is brought within the relations and circumstances for which the act provides. Where a law is broad enough to reach every portion of the State and to embrace within its provisions every person or thing distinguished by characteristics sufficiently marked and important to make them clearly a class by themselves, it is not a special or local but a general law, even though there may be but one member of the class or one place on which it operates. (*West Chicago Park Comrs.* v. *McMullen,* 134 Ill. 170; *People* v. *Kaelber,* 253 id. 552.) In *People* v. *Board of Supervisors,* 185 Ill. 288, this court had under consideration a proviso added to section 30 of the Election law which required "the county board in each county where any State soldiers' and sailors' home or homes, or any national home for disabled volunteer soldiers are located, the inhabitants of which are entitled to vote, to fix and establish the place or places for holding such election or elections, at some convenient and comfortable place or places easy of access on the ground or grounds and within the enclosures where such State soldiers' and sailors' home, or homes, or national home for disabled volunteer soldiers are located," and there held that the proviso did not contravene the provision of section 22 of article 4 of the constitution here under consideration, for the reason that the law was not a special or local law but was a general law, notwithstanding that there was but one place in the State where it would operate. A few of the many cases where all the contentions here urged have been fully discussed and overruled are *People* v. *Madison, supra; People* v. *Opie, supra; People* v. *Militzer,* 272 Ill. 387; *People* v. *Peltier,* 275 id. 217; *People* v. *Craft,* 282

id. 483; *Fisher* v. *Fay,* 288 id. 11. *Worley* v. *Idleman,*
285 Ill. 214, is a case involving the constitutionality of an
act validating hard road bonds but is a case in point in
principle.

The curative act is constitutional and the district is
legally established by the act notwithstanding the irregu-
larity of the elections.

Leave to file the information was properly denied, and
the judgment of the circuit court is affirmed.

*Judgment affirmed.*

CARTWRIGHT and DUNN, JJ., dissenting.

---

(No. 14203.—Judgment affirmed.)
THE PEOPLE *ex rel.* Mac Dingwell *et al.* Plaintiffs in Error,
*vs.* CLARE CLOSE *et al.* Defendants in Error.

*Opinion filed February 22, 1922.*