(No. 14770.—Reversed and remanded.)
JAMES D. WEBSTER et al. Appellants, vs. LESTER T. JACK-
SON et al. Appellees.

*Opinion filed October 21, 1922.*

1. PRACTICE—*practice where necessary party has been omitted.*
Where it appears that a party has been omitted whose presence is
so indispensable to a decision of the cause upon its merits that a
final decree cannot be made without materially affecting his inter-
ests, the objection may be taken by the opposite party at the hear-
ing or on appeal or error, or the court will take notice of the omis-
sion of its own motion and rule accordingly.

2. SCHOOLS—*when bill to enjoin action of officers of high school
district should make the district a party.* A bill by land owners
who claim that their lands have been detached from the territory
of a township high school district and who seek to enjoin the
president and members of the board of education from exercising
authority over the alleged detached territory and to restrain the
collection of taxes should make the high school district a party to
the suit, and the court should not proceed to a decision of the is-
sues involved until the district is made a party.

APPEAL from the Circuit Court of Stark county; the
Hon. JOHN M. NIEHAUS, Judge, presiding.

JOHN W. FLING, JR., and BARNES, MAGOON & BLACK,
for appellants.

J. H. RENNICK, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Toulon Township High School District No. 4 was or-
ganized in 1912 under section 6 of the Township High
School act of 1911 and has since maintained a township
high school. The district comprised ninety-seven sections,
containing 62,080 acres of land, was sixteen miles long
north and south and eight miles wide east and west in its
greatest dimensions, and embraced more than one-third of
the area of Stark county. On March 13, 1918, the Super-

intendent of Public Instruction, on an appeal to him from the action of the *ex-officio* board of Stark county, in accordance with section 90 of the School law as amended in 1917, (Laws of 1917, p. 739,) entered an order detaching from the district about thirty per cent of its territory, consisting of ten and a half sections in the extreme north end and eighteen and a quarter sections in the extreme south end of the district, which he added to the non-high-school district of Stark county. A new map was filed by the county superintendent showing the school district with the reduced boundaries and a new map of the non-high-school district of the county with its enlarged boundaries. After the detachment no attempt was made by the board of education to exercise jurisdiction over the detached lands. No attempt was made by the district to collect taxes on these lands, but taxes were extended against such lands for the support of the non-high-school district of the county. The board of education of Toulon High School District No. 4 filed each year with the secretary of the non-high-school board of education a certificate of attendance of non-high-school pupils who attended the Toulon high school, for the purpose of receiving tuition from all pupils residing in non-high-school territory, and listed as pupils from such non-high-school territory the children who resided in the territory which had been detached from Toulon High School District No. 4. The non-high-school district paid tuition for such pupils residing in such detached territory, and the board of education of Toulon High School District No. 4 accepted such tuition during the school years 1918-19, 1919-20 and 1920-21.

About November 15, 1919, an election was held in Toulon Township High School District No. 4 for the purpose of voting upon the proposition to issue bonds in the sum of $100,000 for the purpose of providing funds for the erection of a new high school building. All of the notices of the election were posted within the city limits of the

city of Toulon and none within the detached territory. The notice was given after the board of education had demanded and received tuition from pupils residing in the detached territory, and after the election the board of education prepared a statement for the prospective buyers of the bonds, in which the board gave the territory of the district as exclusive of the detached property and gave the assessed valuation of the property in the district as $3,495,475, which was the assessed valuation of the territory of the district after the territory in question had been detached. Previous to the detachment of the territory, about December 15, 1915, the board of education of the high school district called an election to vote upon a $40,000 bond issue for the purpose of erecting a high school building, in which the residents of the detached territory participated, and the proposal to issue bonds was defeated by a large majority, and in the bill it is alleged that if they had participated in the election upon the question for the $100,000 bond issue that proposition would have been defeated. After all these occurrences the board of education in September, 1920, filed in the circuit court of Stark county a petition asking for a writ of *certiorari* to review the action of the Superintendent of Public Instruction on March 13, 1918, in detaching the territory from the district. The circuit court quashed the writ, but on appeal the Supreme Court at its June, 1921, session reversed the judgment of the circuit court and remanded the cause to that court, with directions to quash the record of the Superintendent of Public Instruction and the *ex-officio* board. (*Jackson* v. *Blair*, 298 Ill. 605.) A petition for rehearing was denied at the October term, 1921, and on the 26th day of October, 1921, the circuit court of Stark county entered an order quashing the order of the Superintendent of Public Instruction.

On December 26, 1921, the owners of the land in the detached territory, 149 in number, filed this bill in the circuit court of Stark county, which alleged all the facts here-

tofore stated, and represented that the $100,000 of bonds had been sold and the proceeds of their sale were now in the custody of the Toulon township treasurer, $50,000 having been loaned to each of the two State banks in Toulon in November and December, 1919; that the money received from the sale is intact, and that no school building has been built by the district and no contract has been let for building one; that the current expenses of the school have been paid for by the taxes collected from time to time, and that the expenses for the current year likewise can be met from taxes levied on the property of the district, not including the property of the complainants, as has been the custom and practice for the preceding three years. It is further represented that after the decision of the Supreme Court in June, 1921, quashing the order detaching territory from the district, the board of education advertised that it would receive bids for a new high school building. Before the day on which the bids were to be accepted complainants served notice on the board of education that they were not a part of Toulon Township High School District No. 4 and their real and personal property was not located within the district; that they did not vote upon the proposition to issue $100,000 bonds to secure funds for the erection of a new high school building and that the bonds are not a lien or charge on their property; that they were not and would not be bound by any contract made by the board with any contractors for the erection of a new high school building or for any obligation incurred on account of it; that the board had no legal right to levy any tax to bind any of the property of the complainants and the extension of any such tax would be void; that the board had no right to do any act in the erection, operation and maintenance of a new high school building which would create any obligation against the property of the complainants. After the service of this notice the board of education refused to accept bids for any new high school building, and on August 2, 1921,

passed a resolution providing for the levy of taxes for the
support and maintenance of the district for the year 1921
to the amount of $24,000 for educational purposes and
$13,500 for building purposes, including interest on bonded
indebtedness.  On the same day a certificate of levy was
made and filed with the county clerk, and the members of
the board of education have stated and threatened that they
would compel the levy of the tax upon the land of the com-
plainants, and are now threatening to compel the county
superintendent to file a map showing the boundaries of
the high school district as they were before the order of
March 13, 1918, and are also threatening to compel the
county clerk to extend the taxes against the property of the
complainants for the support of the district for the year
1921, including the payment of interest on the bonded in-
debtedness.  The president and the individual members of
the board of education, county superintendent of schools,
county clerk, township treasurer, the two banks, and Wil-
liam G. McRoberts, of Peoria, who is alleged to be the
owner of $25,000 of the $100,000 bonds, are made defend-
ants to the bill, and a temporary injunction is asked against
the county superintendent of schools enjoining him from
making or filing any map with the county clerk showing
the land of the complainants to be within the high school
district; against the county clerk enjoining him from ex-
tending any taxes against the property of the complainants
in such detached territory for the maintenance or expenses
of Toulon Township High School District No. 4 or for
the collection of any money for the payment of the princi-
pal and interest of the $100,000 bond issue; against the
board of education enjoining it from entering into any con-
tract or incurring any obligation for the erection of a new
building for the high school district and from paying out or
disbursing any part of the funds received on account of the
sale of the bonds of the district.  The bill prays that on the
final hearing of the cause the injunction be made perpetual,

and that the president and members of the board of education, and their successors in office, be restrained from claiming that any part of the land and property of the complainants which was detached by the order of March 13, 1918, is a part of or within the territory of Toulon Township High School District No. 4; that they be permanently enjoined from incurring any charge or indebtedness of such district which would be a charge upon the property of the complainants, and that on the final hearing a decree be entered that the boundaries of the territory of Toulon Township High School District No. 4 does not include the property and land of the complainants.

It is manifest that the rights of Toulon Township High School District No. 4 will necessarily be affected by a decree such as the bill prays for, yet that district is not a party to the suit. The object of the bill was to deprive the district of nearly one-third of its territory, to restrain the collection of taxes on all the real or personal property within the territory detached by the order of the Superintendent of Public Instruction, and to impose the burden of the bonds voted upon the remaining two-thirds of the district. It seeks to perpetually enjoin the individual defendants, who are president and members of the board of education, from exercising jurisdiction over part of the territory of the school district, and asks for a decree that the territory of the school district does not include the territory detached by the order of March 13, 1918. No decree of such a character which would be binding on the district could be rendered in a suit to which the district was not a party. No objection for want of parties was made in the circuit court or has been made in this court. If the objection were the absence of merely formal parties, whose presence was not indispensable to a decision of the cause upon its merits, it would be too late to raise the question now, but whenever it appears that a party has been omitted whose presence is so indispensable to a decision of the case upon its merits

that a final decree cannot be made without materially affecting his interests, the objection not only may be taken by the opposite party at the hearing or on appeal or error, but the court will take notice of such omission of its own motion and rule accordingly. (*Gerard* v. *Bates,* 124 Ill. 150.) In the case of *Abernathie* v. *Rich,* 229 Ill. 412, the complainants omitted to make necessary parties to the bill, and it was said that if the plaintiffs in error were all free from legal disability the decree against them would not be reversed for the reason, alone, that there was a lack of necessary parties, but since one of the complainants was under a legal disability it was the duty of a court of review to protect her rights, and in such case the decree would be reversed to enable the complainants to amend their bill to bring in the necessary parties. The same condition exists in this record, for at least one of the complainants is represented by a guardian and next friend. When it appeared to the court that Toulon Township High School District No. 4 was a necessary party to the suit and it had been omitted as a defendant, the court should not have proceeded to a decision of the case upon its merits but should have required the district to be made a party to the bill. This was the course indicated as proper to be taken in the case of *McMechan* v. *Yenter,* 301 Ill. 508. As in that case, we will not pass upon the merits of this controversy in the absence of a party whose interest will be directly affected by the judgment, but will reverse the decree and remand the cause, with leave to appellants, upon payment of all costs, to make Toulon Township High School District No. 4 a defendant, and with directions to the circuit court, if that is not done, to dismiss the bill at the cost of the appellants.

*Reversed and remanded, with directions.*