(No. 15568.—Decree affirmed.)

JAMES D. WEBSTER et al. Appellees, vs. TOULON TOWNSHIP
HIGH SCHOOL DISTRICT No. 4 et al. Appellants.

*Opinion filed October 28, 1924.*

1. EQUITY—*when general demurrer to bill is properly overruled.*
Where a bill shows on its face that complainants are entitled to
equitable relief, a general demurrer filed without pointing out de-
fects in the bill is properly overruled.

2. ESTOPPEL—*municipal corporation is subject to estoppel in pais.*
A municipal corporation, as well as private corporations and indi-
viduals, is subject to an estoppel *in pais* by the words, acts or con-
duct of its officers and agents.

3. SAME—*when estoppel in pais will be applied to municipal
corporations.* The doctrine of estoppel *in pais* will be applied to
municipal corporations as justice and right may require, and any
positive acts by municipal officers which may have induced the
action of the adverse party, so that it would be inequitable to per-
mit the corporation to stultify itself by retracting what its officers
have done, will work an estoppel.

4. SCHOOLS—*when school district is estopped to exercise author-
ity over territory.* A township high school district is estopped to
exercise authority over certain territory detached from the district
prior to the holding of the Supreme Court as to the invalidity of
section 90 of the School law, under which the detachment proceed-
ings were had, where the district had refused to tax the territory
after it was detached, had collected tuition from its pupils who at-
tended the high school, and had held an election for issuing bonds
for a school building without notice to the voters in said territory
or giving them an opportunity to participate in the election.

5. SAME—*general rule as to when a school district is "compact."*
The word "compact," as applied to school territory, means concen-
trated or close or near to a certain center, and a school district is
not compact in the constitutional sense unless its territory is so
closely united and so nearly adjacent to the school building that all
the pupils of the district may conveniently travel to and from their
homes to the school building in a reasonable length of time and
with a reasonable degree of comfort.

6. RES JUDICATA—*res judicata must be set up by plea or answer.*
The defense of *res judicata,* and similar defenses, must be raised
by plea or answer.

DUNN, J., dissenting.

APPEAL from the Circuit Court of Stark county; the Hon. T. N. GREEN, Judge, presiding.

JAMES H. RENNICK, and F. B. BRIAN, for appellants.

JOHN W. FLING, JR., and BARNES, MAGOON, BLACK & HORTON, (GEORGE W. HUNT, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

One hundred forty-nine tax-payers and legal voters owning lands in the territory (hereinafter referred to as the detached territory) detached from Toulon Township High School District No. 4 by the State Superintendent of Public Instruction, filed their bill in the circuit court of Stark county on December 21, 1921, against said high school district and the members of the board of education, G. C. Baker, superintendent of schools of said county, William E. Nixon, county clerk of the county, Harry W. Walker, township treasurer of Toulon township, the bank of Charles P. Dewey & Sons, William G. Roberts, the unknown holders of bonds of the district, and the First National Bank of Chicago, to which interest is paid on bonds for unknown holders thereof, praying for a decree that the district shall not include the detached territory; that the board of education of the district be enjoined from exercising authority over the detached territory and from incurring any indebtedness which would operate as a lien thereon; that the county clerk be enjoined from extending any tax on the detached territory for the maintenance of the district, and for other and further relief. A general demurrer filed to the bill was overruled, and the defendants (appellants) electing to abide by their demurrer, decree was entered in favor of complainants (appellees). By its decree the court found that the district as originally

formed was not composed of compact and contiguous territory and that it is equitably estopped from claiming that it includes any of the detached territory, and decreed that the district be restricted to 68¼ sections of land, (the lands remaining in the district after the detached territory was taken from it,) and that the district shall not include any of the lands in the detached territory; that the board of education be permanently enjoined from claiming that any of the lands detached by the order of the State superintendent are a part of the district, and that the county clerk be enjoined from extending any tax against the detached territory levied by the district. The school district and the members of the board of education have appealed from the decree of the court.

The material facts and statements averred in the bill and admitted by the demurrer are in substance the following: Toulon Township High School District No. 4 was organized July 30, 1912, under the High School act of 1911, declared invalid by this court in *People* v. *Weis,* 275 Ill. 581. The validating act of 1917 did not legalize the district, because the territory thereof was not contiguous and compact within the constitutional sense as defined by the decisions of this court. The original district comprised 97 sections of land of an assessed valuation of $4,000,000, was sixteen miles north and south by eight miles east and west, and embraced more than one-third of the entire area of Stark county. The detached territory consists of 10½ sections of land situated in the north end of the original district and 18¼ sections situated in the south end thereof, leaving in the district 68¼ sections, hereinafter referred to as the restricted territory, or the district as restricted by the State superintendent. The district as originally organized is unreasonably large, abnormal in shape, and is not composed of compact and contiguous territory easily accessible to all the pupils of school age in the district. The city of Toulon, where the high school is to be located, is

situated very near the center of the district. A large portion of both parts of the detached territory is broken country, in which the roads are crossed by streams subject to overflow in rainy seasons, and many of the pupils therein would be required to travel twelve miles or more from their homes in order to attend the school. On account of the distance to be traveled and the conditions aforesaid it would be impossible, during a large part of the winter and spring months, for students residing in the detached territory to regularly attend school by going to and coming from their homes. It would be impossible for the pupils of the detached territory to have the advantages of the high school without boarding and lodging at or near the school center, at considerable expense. In 1915 an election was had in the original district to vote for or against a $40,000 bond issue to build a school house, etc., in which appellees participated, and the bond issue was defeated. On November 15, 1919, there was another election in the district as restricted by the State superintendent, for the purpose of voting for or against a bond issue of $100,000 to provide funds to erect a new school building, which resulted in favor of such bond issue, but it would have been defeated if appellees had participated in that election. They did not participate in such election because the detached territory at that time was not recognized by the board of education as a part of the district. No notice of any kind was published or posted in the detached territory, and no notice or knowledge was had by the parties living in the detached territory that they were, or ever would be again, recognized as having any right to participate in such election, but were led to believe by the conduct of the board of education hereinafter related, that it regarded the question of the boundaries of the district as permanently settled by the State superintendent.

On August 1, 1917, a petition was filed by the required number of residents and legal voters, under section 90 of

our School law, asking that the territory later detached, and other territory, be detached from the district, on the ground that the district as originally organized did not consist of compact and contiguous territory, easy of access to all the pupils in the district.  On October 5, 1917, that petition was denied by the *ex-officio* board of Stark county because it could not detach all the territory asked to be detached, but it recommended that in justice the detached territory should be detached.  On appeal from that order the State Superintendent of Public Instruction on March 13, 1918, after a full hearing, made an order detaching from the original district the detached territory aforesaid, at which hearing the district and the board of education were represented by their attorneys.  Afterwards the county superintendent of schools of the county made and filed with the county clerk a map of the district in accordance with the order and finding of the State superintendent, showing the boundaries of the district to be the restricted territory aforesaid, and also made a map showing the detached territory to be in a non-high-school district.  Since that time, and up to about August, 1921, the residents of the detached territory and their property have been taxed in the non-high-school district, and appellees and the other residents of the detached territory paid all their taxes so assessed by the non-high-school district.  The high school district during the two and a half years or more that the detached territory was taxed in the non-high-school district, and up to December, 1921, demanded and received tuition from the resident pupils of the detached territory who attended the high school, and during that time did not tax or attempt to tax the residents of the detached territory, or their property, for high school purposes.  After the $100,000 bonds were voted, as aforesaid, the board of education of the high school district prepared a statement for prospective bond buyers, in which the board described the territory then com-

313—35

posing the district as the restricted territory, and stated to those concerned in the purchase of such bonds that the assessed valuation of the district (the restricted territory) was $3,495,475. On December 3 and December 16, 1918, two other petitions were filed, asking that certain other territories be detached from the west side of the district and added to the LaFayette High School District, which territories were within four miles of the city of Toulon, where the high school is located, and within the restricted territory. At the hearing of both of these petitions before the *ex-officio* board of Stark county the board of education and the district appeared and filed written answers and objections to the detachment of these two territories, alleging that Toulon Township High School District No. 4 was the restricted territory aforesaid and was compact and contiguous, and resisted detachment on those grounds. They introduced in evidence before the *ex-officio* board certified copies of all the proceedings wherein the territory aforesaid had been detached from the original district, including the order of the State superintendent of March 13, 1918, in proof that the boundaries of the district were as restricted by the State superintendent and that the district was compact and contiguous. The territories aforesaid were detached by the State superintendent on appeal and were added to the LaFayette High School District about June 12, 1920. Appellants being dissatisfied with that order, thereafter attacked all the proceedings aforesaid to detach territory from the original high school district and sued out common law writs of *certiorari*, and as a result of these litigations section 90 of the School act was declared invalid by this court in *Jackson* v. *Blair,* 298 Ill. 605, in which a rehearing was denied October 7, 1921. The final order of the circuit court quashing the records was entered December 5, 1921, by the circuit court, and the suit now before this court was promptly brought very soon after that date.

It is further alleged in the bill that the money received from the sale of bonds voted at the election aforesaid is in the hands of the school treasurer of Toulon township; that no school building has been built and no contract has been let for the same; that the current expenses of the school have been paid by taxes collected from time to time from the property owners of the district as restricted, and that such current expenses can likewise be met from taxes levied and collected hereafter by the district as restricted; that after the decision of this court in the case of *Jackson* v. *Blair, supra,* the board of education of the district filed a certificate of levy with the county clerk and thereby sought to compel him to levy taxes against the lands of appellees in the detached territory for the purposes of the school district, and is threatening to compel the extension of such taxes on the property of appellees.

This case was before this court and was considered in *Webster* v. *Jackson,* 304 Ill. 569, to which we refer for further allegations in this bill.

The bill on its face shows that appellees are entitled to equitable relief. By their general demurrer appellants have pointed out no defects in the bill, and the demurrer was properly overruled by the court. (*Langlois* v. *McCullom,* 181 Ill. 195.) The doctrine is now well established that a municipal corporation, as well as private corporations and individuals, may be subject to an estoppel *in pais* by the words, acts or conduct of its officers and agents. (*Martel* v. *City of East St. Louis,* 94 Ill. 67; *People* v. *Maxon,* 139 id. 306; *Town of Princeton* v. *Templeton,* 71 id. 68; *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 id. 25; 21 Corpus Juris, 1190.) In the first case just cited it is held that the doctrine of estoppel *in pais* applies to municipal corporations, but the public will be estopped, or not, as justice and right may require, and that any positive acts by municipal officers which may have induced the action of the adverse party, and where it would

be inequitable to permit the corporation to stultify itself by retracting what its officers have done, will work an estoppel.

The case of *People* v. *Maxon, supra,* is very much in point in this case. It was there held that the village of Colfax was estopped to claim that certain territory detached by its invalid ordinance was a part of its territory. The sole ground of estoppel was the affirmative act of the village in publishing its void ordinance and permitting the payment of the tax to the other corporate body and by inducing the other corporate body to do other things to its detriment.

The school district in this case, before the $100,000 bonds were voted, by its conduct led the voters and taxpayers of the detached territory to believe that it would abide the decision of the State superintendent in his detachment order of March 13, 1918, when it in the two other cases for detachment brought in December, 1918, solemnly declared in its answers or objections to such detachments that the district at that time was only composed of the restricted territory, and introduced the records and other evidence of the first detachment proceeding to prove its declaration. It further confirmed the belief of appellees by collecting tuition from the pupils in the detached territory, in allowing the non-high-school district to claim and tax that territory, and in refusing to tax or attempt to tax the detached territory for its own purpose. The school district continued in the idea that its territory was only the restricted territory by holding therein the election in November, 1919, for the purpose of voting the $100,000 in bonds, and in representing to prospective purchasers of the bonds that the district was only composed of the restricted territory and giving to them the assessed value thereof. By the foregoing acts and declarations the voters in the detached territory were clearly led to believe that the school district no longer regarded the detached territory as its territory and the voters of the detached territory as having

no right to vote on the bonds. The bonds were thus voted by the voters in the restricted territory only, and the bonds could not have been voted if the voters of the detached territory had been recognized and called on to vote as voters of the district, under the allegations of this bill. It is very apparent that had not the two other suits for detachment been brought against the district it would never have further resisted or questioned by writ of *certiorari* the order by the State superintendent in the first detachment, and appellees are in no way responsible for those two suits being brought.

It is claimed by appellants that appellees have in no way been damaged or prejudiced by the conduct of the district which prevented appellees from voting in the second bond election. The wrong inflicted upon appellees, and for which they have this equitable remedy, is to be found in the action of the district in reversing its conduct and attitude and calling on appellees to assist in paying off bonds which they had no voice in authorizing and were induced to believe by the conduct of the district they would never be called on to pay, and which bonds would never have come into existence, under the allegations of the bill, if appellees had not been thus induced to refrain from voting at that election. Appellees were also lulled into not invoking any other remedy at law for three full years or more because of the conduct of appellants, and unless this suit avails them, they will be compelled to remain in a school district that is not compact and contiguous and in which the pupils of the detached territory cannot have the benefits of the school without lodging and boarding at the school center, although the detached territory is taxed for the same.

It is now finally settled by the decisions of this court that the word "compact," as applied to school territory and as defined by the late decisions of this court, means concentrated, or close or near to a certain center, and that a school district is not compact, in the constitutional sense, unless

its territory is so closely united and so nearly adjacent to the school building that all the pupils of the district may conveniently travel from their homes to the school building and return in a reasonable length of time and with a reasonable degree of comfort. (*People* v. *Young*, 301 Ill. 67; *People* v. *Kirkham*, id. 45; *People* v. *Cowen*, 306 id. 330; *People* v. *Crawford*, 310 id. 205.) This district not being compact and contiguous according to the allegations of the bill, could not, under the foregoing decisions, be validated by any validating act, and the appellees have the equitable right, under the allegations of the bill, to be relieved of all the foregoing hardships. The district by its own conduct fixed its boundaries and the limits of its territory, the same being the territory and the boundaries of the restricted territory. The circuit court in making its decree simply declared that the district had fixed its boundaries by its own conduct and was bound thereby, and that the facts gave to the court jurisdiction to decree accordingly. The district has no just ground of complaint against the action of the court. No other party to this suit has any such ground. The bondholders purchased the bonds under the positive information that the boundaries of the district were the same as those of the restricted territory. The school district as restricted has ample territory and of sufficient assessed value to establish and maintain an efficient high school district. The court had jurisdiction to enter the decree defining the territory and its boundaries for the reasons aforesaid. (*Zeigler* v. *Douglas,* 283 Ill. 407.) The decree of the court gives complete equity to all parties interested in this suit and no other decree would have done so.

It is argued by appellants that appellees were barred by the order and judgment of the circuit court affirmed in *People* v. *Jackson*, 305 Ill. 385. That was a proceeding brought after the filing of this bill, and its existence was not disclosed by any allegations in the bill. The defense

of *res judicata* and similar defenses must be raised by plea or answer. *Evans* v. *Woodsworth*, 213 Ill. 404.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE DUNN, dissenting.