(No. 31725.—

THE PEOPLE *ex rel.* Donald McLain *et al.,* Appellants, *vs.* DON GARDNER *et al.,* Appellees.

*Opinion filed January 18, 1951.*

AUSTIN LEWIS, State's Attorney, of Granite City, L. H. HOLLAND, of Wood River, and JESSE R. BROWN, of Edwardsville, for appellants.

DONALD M. BUCKLEY, of Edwardsville, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

The People of the State, on the relation of Donald McLain and Floyd W. Raddcliffe, brought a *quo warranto* action in the circuit court of Madison County, questioning the validity of Roxana Community Unit School District No. 1, and charging that Don Gardner and his six co-defendants, had assumed to act as the members of its board of education without any authority or warrant in law. Defendants answered the complaint, justifying their membership on the board of education and their actions by the proceedings incident to the formation of the district and their own election. Thereafter, Wayne Russell and John O'Neil, residents and taxpayers of Common School District No. 105, and Len V. Major, a resident and taxpayer in what was formerly School District No. 103, were permitted to file an intervening petition on behalf of themselves and all other persons similarly situated and, also, the school children in school districts No. 105 and No. 103 and in Roxana Community Unit School District No. 1. Defendants' motion to strike portions of the petition was denied. A second intervening petition was filed by Harry Ringering and three others, citizens and taxpayers of East Alton-Wood River Community High School District No. 144, individually, and in their official capacity as members of its board of education. Defendants made a motion to strike material portions of the second intervening petition and, thereafter, answered the petition. The cause was heard upon the pleadings, evidence adduced, and a stipulation of facts. A judgment was entered finding that the territory embraced in the district was compact and contiguous, and adjudging defendants not guilty of usurping the offices of members of the board of education. Plaintiffs and the intervening petitioners prosecute this appeal, a franchise being necessarily involved.

The Roxana Community Unit School District No. 1 was organized under section 8-9 of the School Code (Ill.

Rev. Stat. 1949, chap. 122, par. 8-9,) which provides in part that, upon receipt of a petition signed by 100 or more voters residing in any contiguous and compact territory having a population of not less than 2000 persons and an equalized assessed valuation of not less than $6,000,000, described in the petition, the county superintendent of schools of the county in which the territory, or the greater part, is situated shall order an election to be held for the purpose of voting for or against the proposition of establishing a community unit school district to maintain grades one to twelve, inclusive. A form of notice of election to be posted by the county superintendent is provided. Section 8-10 sets forth the form of official ballot. Section 8-12 makes detailed provision for the election of a board of education.

December 15, 1948, a petition, signed by 196 legal voters residing in the territory having a population of not less than 2000 persons and an equalized assessed valuation in excess of $6,000,000, was filed in the office of the county superintendent of schools of Madison County, requesting him to call a special election for the purpose of voting for or against the proposition to organize a community unit school district within the territory described, pursuant to section 8-9 of the School Code. The petition was presented to the Madison County school survey committee on January 6, 1949. The county superintendent, on February 21, 1949, ordered an election to be held on March 5, 1949. A majority of 218 votes out of 230 votes cast favored the establishment of a community unit school district which, thereafter, the superintendent designated as Roxana Community Unit School District No. 1, and hereafter referred to by us as Roxana District. An election called by the county superintendent resulted in the election of Don Gardner and six others as the members of its board of education.

All of the corporate limits of the village of Roxana and a small portion of the corporate limits of the city of Wood

River comprise the sole territory of the new school district. Other territory has been annexed to Roxana District since its organization. The area situated in the city of Wood River was formerly a part of the Roxana High School District and the Roxana Grade School District, both of which were dissolved by the organization of the new district, namely, the Roxana District. Included in the Roxana District is a tract of land designated and described as the "Shell Tank Farm," situated in Chouteau township and within the corporate limits of the village of Roxana. This land was formerly a part of Common School District No. 105, hereafter called District No. 105, and, also, a part of East Alton-Wood River Community High School District No. 144, which will be referred to as District No. 144. The Shell Tank Farm consists of approximately 160 acres, located at the southwest corner of the new school district. Inclusion of this property adds to the Roxana District an area about 700 or 800 feet in width at the point where it is attached to the rest of the district, which area expands to a width of over one mile east and west and about one-third of a mile north and south. The assessed valuation for the year 1949 of the Shell Tank Farm was $1,827,395, as determined by the State Tax Commission multiplier. Uncontroverted evidence discloses that this property, at the time it was included in the territory to be incorporated in the Roxana District, and at all times since, has been unoccupied, has no families living on it, and no school children, but was and is highly industrialized property upon which the Shell Oil Company has built what is commonly known as the Shell Tank Farm.

The two intervening petitions charged that Roxana District is neither contiguous nor compact and that the portion of its area improved by the tank farm owned by the Shell Oil Company was taken from school districts Nos. 144 and 105 and added to the new district, thereby making the latter a "land-grabbing affair," contrived and planned for the ad-

vantage of the village of Roxana rather than in the interests of maintaining a free public-school system. Both petitions alleged that the proposed district was presented to the school survey committee of Madison County and that the committee voted to disapprove the formation of the district. Concluding general allegations of the petitions are that Roxana District was organized under an unconstitutional and void State law, without further describing the statute. With respect to these allegations, we deem sufficient the observation that the constitutional validity of the Community Unit School District Act has been sustained against numerous constitutional objections leveled against it. *People* v. *Deatherage*, 401 Ill. 25.

The principal issue made by the pleadings and argued upon this appeal is whether the area of the new school district, Roxana District, is contiguous and compact, within the contemplation of section 8-9 of the School Code. The gist of the contentions urged by plaintiffs and the intervening petitioners is that Roxana District was organized primarily, if not solely, for the purpose of obtaining valuable property, namely, the Shell Tank Farm, "wherein there are no taxpayers or no voters * * * and without any probability of there ever being a school child living within the area to be educated," for the new community unit school district and taking it from districts Nos. 144 and 105 to which it had hitherto belonged. The controlling question relates not to the motivating force incident to the organization of the new school district but is, instead, whether it meets the applicable requirements of the School Code, and, specifically, whether it is contiguous and compact.

Recourse to section 8-9 of the School Code discloses that the rules and conditions under which a community unit school district may be organized are set forth with considerable particularity. Admittedly, the requirements of the statute were satisfied other than the requirement that the territory of the new school district be compact and con-

tiguous. When the petition was filed, the Shell Tank Farm was a part of the corporate limits of the village of Roxana. The new school district includes all of the territory located within this village and, necessarily, the Shell Tank Farm. Plaintiffs and intervenors object to the inclusion of the tank farm in the new school district, asserting that the Shell Tank Farm and the rest of the district do not represent one compact territory and pointing out that the district could have been formed in a different manner. They concede that the Shell Tank Farm could well be deemed contiguous to the rest of the territory of Roxana District if it were a highly developed residential district but insist that there must be a different decision when the lands are used entirely for industrial purposes and the only object in including them is to obtain the substantial revenue to be derived therefrom. Stated somewhat differently, plaintiffs and intervenors argue that, because the valuable tract of land known as the Shell Tank Farm was originally located in school districts Nos. 144 and 105, these districts have some undisclosed kind of vested right to retain this tract within their boundaries forever. This cannot be the law, for the adequate reason, among others, that the General Assembly is not fettered by any constitutional restrictions or restraints with reference to the formation of school districts. (*People ex rel. Russell* v. *Graham,* 301 Ill. 446.) The Community Unit School District Act contains no provision reflecting a legislative intent that the boundaries of a school district, once established, will remain unchanged forever thereafter. On the contrary, the legislature has provided a method whereby legal voters or landowners, who desire so to do, may detach their property from one school district and annex it to another.

In the present case, the village of Roxana is, of course, a community, irrespective of the number of persons residing within its territorial limits, and the Shell Oil Company's property in the center of the village is as much a

part of the community of Roxana as is the part of the village occupied by families with school children. The mere fact that the Shell Tank Farm may be in another township destroys neither the contiguity nor the compactness of the unit district. There is no requirement in the Community Unit School District Act that districts shall confine their boundaries to township lines. At the time of its organization, the area of the district was two miles in width and two and one-fourth miles in length. Considerable territory has since been annexed. The territory of a school district is compact and contiguous when it is so closely united and so nearly adjacent to the school building that all the students residing in the district, their ages considered, may conveniently travel from their homes to the school building and return the same day in a reasonable time and with a reasonable degree of comfort. (*People ex rel. Tudor* v. *Vance,* 374 Ill. 415; *People ex rel. Lutz* v. *France,* 314 Ill. 51; *Webster* v. *Toulon Township High School Dist.* 313 Ill. 541; *People ex rel. Koontz* v. *Emmerson,* 313 Ill. 209; *People* v. *Graham,* 301 Ill. 446.) The territory need not be rectangular or square to be contiguous and compact. Again, every reasonable presumption is indulged in favor of the validity of a school district established pursuant to legislative authority. Conversely, a school district will not be held invalid for lack of contiguity or compactness unless it clearly appears from the evidence that children of school age residing in the district cannot reasonably avail themselves of the privileges of the school. *People* v. *Vance,* 374 Ill. 415; *People ex rel. Dole* v. *Standley,* 313 Ill. 46.

Attention is directed to the fact that resident voters in the territory of existing districts Nos. 105 and 144, which was not taken into the new community unit school district, did not enjoy the right to vote upon the proposition of its establishment. The requirement as to residence prescribed by section 8-9 of the School Code is that only those persons

residing in the territory described in the initiating petition are entitled to vote upon the proposition of organizing a community unit school district. This provision reflects the legislative intent to restrict the right to vote to those persons who are to be residents and taxpayers of the new school district because they have a more direct interest in its formation than those persons who reside in the remaining portion of a so-called fractioned district. *People* v. *Deatherage,* 401 Ill. 25; *Husser* v. *Fouth,* 386 Ill. 188; *People ex rel. Taylor* v. *Camargo Community Consolidated School Dist.* 313 Ill. 321.

It is urged that the court erred in not finding that school children in other districts were deprived of their right to have a system of free schools established and maintained. This contention is predicated upon the unsupported claim that the sole purpose of taking the Shell Tank Farm from other school districts and including it in the area constituting Roxana District was to deprive the other districts of tax money and add it to the proposed unit district, contrary to the spirit of the law requiring school boards throughout the State to maintain a free public-school system. It is insisted that arbitrarily taking an area for tax purposes is something which may prevent a school area from being contiguous and compact. Section 1 of article VIII of our constitution declares: "The general assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." The constitution does not provide the method by which the thorough and efficient system of free schools required to be provided shall be organized nor the officers by whom its affairs shall be directed and administered. The General Assembly has been granted the power to declare what shall constitute a common school education and what system of free schools will be thorough and efficient. Accordingly, it is vested with power to act directly and create school districts by general or special

acts, or it may prescribe agencies by which the boundaries of school districts shall be determined. (*People* v. *Graham,* 301 Ill. 446.) The question of the efficiency and thoroughness of the school system established by legislative permission is one solely for the legislature to answer and the judiciary lacks power to intrude itself. (*People* v. *Deatherage,* 401 Ill. 25.) In short, as observed in *People ex rel. Funk* v. *Hagist,* 401 Ill. 536, "It has always been considered by this court that the legislature has full and complete power to establish rules and requirements for school elections unless that power has been abused."

The remaining contention requiring consideration is that the petition for organizing the proposed district was not presented to the county survey committee, conformably to section 16 of "An Act in relation to the survey and reorganization of school districts and making an appropriation therefor," approved June 20, 1945, (Ill. Rev. Stat. 1949, chap. 122, par. 729,) which declares that, notwithstanding any other provision of the School Code, no petition shall be filed or other proceedings had for a change in the boundaries of any school district in a county or partly in a county where a county survey committee has been elected unless the petition for change is presented to the committee, in writing, at a meeting held to consider the change. The committee, it is provided, may make suggestions to the petitioners appearing at the meeting but shall have no power to grant or deny the petition. Plaintiffs point out that these statutory requirements are mandatory and assert there is no competent evidence in the record that the petition was submitted to the survey committee. Apart from the fact that the record discloses the petition was presented to the Madison County school survey committee on January 6, 1949, the provision of the School Code upon which plaintiffs place reliance has no application to proceedings for the establishment of a new community unit school district, but applies only where the primary object sought

is a change in the boundaries of existing districts. As aptly pointed out in *Radford* v. *Withrow,* 401 Ill. 14, recommendations of a county survey committee could be helpful to a county superintendent in the exercise of his discretionary power in granting or denying a petition for the detachment from, or annexation to, school districts, but could be of no help to him in the establishment of a new district for the simple reason that he exercises no discretion in this matter.

The judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*