## BROOKS et al. v. SHANNON et al.

No. 28071.   Jan. 24, 1939.

256

Bailey E. Bell and Silverman, Rosenstein & Rinehart, for plaintiffs in error.

C. H. Rosenstein, for defendants in error.

DAVISON, J. The plaintiffs in error, as plaintiffs, filed their petition in the district court of Tulsa county, praying for injunctive relief against the defendants, as the board of education of the city of Tulsa, state of Oklahoma, independent school district No. 22, Tulsa county, seeking to enjoin the defendant board and the individual members thereof from abandoning Washington School, one of the elementary schools comprising the school system of said district, and to enjoin the defendants from dismantling and salvaging the public school buildings and property in use at said school.

The court issued a temporary restraining order. Answers were filed, and the cause tried, resulting in a judgment refusing the injunctive relief asked for and dismissing the petition of the plaintiffs. The plaintiffs have appealed.

Seven separate assignments of error are presented. In assignment No. 4, it is alleged:

"That the court erred in ruling that the defendants in error had discretionary right as a matter of law to abandon said school and destroy the property thereof without the consent and approval of the school patrons, voters and taxpayers."

This assignment represents the gist of the contention presented for our consideration. If this contention is true, the court committed error and the judgment should be reversed. If the contention is not true, the only other question presented, necessary to consider, is: Did the board of education, in closing said school, act arbitrarily or fraudulently and in bad faith, and in such a manner as to abuse its discretion?

Considering the first proposition, we are cognizant of the fact that the laws applicable to common school districts and independent school districts are not the same, and different statutory provisions govern the different classes of school districts. Kellogg v. School District No. 10, of Comanche County, 13 Okla. 285, 74 P. 110.

Section 6853, O. S. 1931 (70 Okla. St. Ann. sec. 181) provides:

"Each city of the first class, and each incorporated town maintaining a four year high school fully accredited with the State University, shall constitute an independent district and be governed by the provisions of this article."

Section 6861, O. S. 1931 (70 Okla. St. Ann. sec. 183) provides:

"The public schools of each city or town organized in pursuance of this article shall be a body corporate and shall possess the usual power of corporations for public purposes, by the name and style of 'The Board of Education of the city or town of _____ of the State of Oklahoma,' and in that name may sue or be sued, and be capable of contracting or being contracted with, of holding and conveying such personal and real estate as it may come into possession of, by will or otherwise, or as is authorized to be purchased by the provisions of this article."

These provisions are a part of article 9, chapter 34, sec. 6853 et seq., O. S. 1931. They are intended to deal specifically with independent school districts, and it cannot be disputed that independent school district No. 22, in Tulsa county, and which embraces the city of Tulsa and other outlying territory, is an independent school district of a city of the first class.

Section 6867, O. S. 1931, a part of said chapter 34, article 9, as amended by chapter 34, article 2, S. L. 1937, provides in part:

"The board of education shall have power to elect their own officers, except as otherwise provided by law; to make rules and regulations governing the board and the schools and school system of their respective dis-

tricts; to maintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school district; * * * to incur all expenses, within the limitations provided by law, necessary to carry out and fulfill all powers herein granted; to contract with and fix the compensation of all officers, servants and employees and exercise sole control over all of the schools and all school property of the district."

In Cosden v. Board of Education, City of Tulsa, 60 Okla. 214, 159 P. 1108, this court held:

"By virtue of section 3, article 6, of chapter 219 of the Session Laws of 1913, the board of education of cities of the first class in this state possess the power and authority to sell and convey real estate, and said board may exercise this power without the necessity of making any finding of the reason or necessity which induces the exercise of its discretion."

Section 3, article 6 of chapter 219 of the Session Laws of 1913, was brought forward as section 1406, C. O. S. 1921, which became section 6861, O. S. 1931, quoted above.

The authority and general discretionary powers of boards of education in independent districts, such as here considered, are well stated in the general rule as to the authority of boards of education in 24 R. C. L., 573, section 21, as follows:

"The law commits the government and conduct of the schools, in general, to the discretion of the board of education of the district, and places it beyond that of the patrons. Let the results be good or bad, there is no remedy, so long as the board acts within the limits of its legal power and authority. If it employs such teachers as the law authorizes it to employ, the patrons cannot interfere by injunction or otherwise, merely because it might have found others more competent or satisfactory. The same rule applies to all other things left to its discretion."

A case in point and applicable to the instant case is Morse v. Ashley et al. (Mass.) 79 N. E. 481, wherein the authorities closed a certain school building, thus necessarily requiring the pupils of the school to attend elsewhere in the district. By vote of the people of the town it was ordered that the closed school be reopened. Upon failure to comply with the request, a writ of mandamus was sought to compel compliance. The court held:

"Under Rev. Laws, c. 42, sec. 27, providing that the school committee of a town 'shall have the general charge and superintendence of all the public schools,' the school committee acts, not as agents of the town, but as public officers, intrusted with power and charged with duties concerning the maintenance of the school."

In Crow et al. v. Consolidated School District No. 7 et al. (Mo. App.) 36 S. W.2d 676, that court said:

"Plaintiffs undertake to show by technical and hairsplitting construction of the statute that the power to change a schoolhouse site is not conferred upon the board by section 11241. But the power to establish schools necessarily carries with it the power to abandon other schools no longer required, and said section confers upon the board the power to dispose of such property. The power to change the school site in city and consolidated districts should rest somewhere, and a reasonable construction of the law indicates an intention to confer that power upon the board."

What was said in that case might well be said in the instant case. If the power to determine what schools shall be established, operated, and abandoned does not rest with the board of education, where does it rest? Who else would give the matter the serious and unbiased consideration which would tend to result to the best interest of the schools as a whole rather than in a local interest? We are convinced that it was the intent of the Legislature to lodge these powers in the boards of education of independent school districts. We must therefore conclude that the board of education of the city of Tulsa had the legal right, power, and authority to abandon the Washington School.

Having reached this conclusion, it remains to be considered whether or not it is conclusively shown from the record that the board acted arbitrarily, maliciously, or unjustly in closing the school, and whether or not same was an abuse of its discretionary authority as contended.

It is shown from the record that there are four schools within a square mile of territory in independent school district No. 22, embracing Washington School, and it is shown that a fifth school is located near the line of the mile square. All of these schools are elementary schools and are doing practically the same class or kind of work. It is shown that during the years from 1930 to 1937, there had been a considerable decrease in the number of pupils attending these schools. It showed that for some years past, the school authorities had been considering the advisability of closing some one of these schools. Particular consideration was given as to the educational advantages offered, the financial interest of the district as well as the utility of the various buildings.

It was upon the recommendations of the superintendent of schools, the assistant superintendent in charge of elementary education, and the maintenance department of the schools that the board of education reached the conclusion that the best interest of the entire school district would result in the abandonment of Washington School and assignment of the students attending that school to other schools.

Each member of the board of education gave testimony relative to the consideration given to the matter of closing the Washington School. It was the undisputed testimony of each that their conclusion was reached after due consideration of the best interest of the school district, and that no extraneous fact or consideration influenced them.

The testimony is voluminous and cannot be quoted here. It contains diversity of thought and opinion. It would be but natural that some of the children attending the Washington School will suffer some inconvenience by this change. There is nothing in the record that convinces this court that the board of education abused its discretion in closing Washington School, or that they did other than what they thought was for the best interest of the school system and all concerned, and such authority and discretion should not be interfered with by injunction "unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion." 32 C. J. 252, sec. 396.

This question is not an entirely new one before this court. In Farrimond et al. v. Coalgate School District, 25 Okla. 707, 108 P. 371, this court held:

"A taxpayer and citizen of a school district having children of school age cannot maintain an action against the officers of said district calling in question the propriety of their public acts upon the ground that the act complained of will make it less convenient for him to send his children to school."

In Dunham v. Ardery, 43 Okla. 619, 143 P. 331, this court held:

"Where the duties devolving upon a ministerial officer require the exercise of discretion and judgment, and such officer has acted, although erroneously, a writ of mandamus may not lawfully issue to review, reverse, or correct the erroneous decision of such officer, nor to control his decision, even though there may be no other method of review or correction provided by law."

These authorities are further supported by the holdings of this court in Boyle v. Rock Island Coal Mining Co. et al., 125 Okla. 137, 256 P. 883; Moore et al. v. Porterfield et al., 125 Okla. 217, 257 P. 307; Eckerle et al. v. Ferris et al., 175 Okla. 107, 51 P. 2d 766; Molacek v. White, 31 Okla. 693, 122 P. 523; and from other court jurisdictions, Surratt et al. v. Cash et al., Board of School Trustees (S. C.) 88 S. E. 256; Clarkson v. Supreme Lodge. 99 S. C. 134, 82 S. E. 1043.

The court being of the opinion that the trial court committed no error, the judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY and GIBSON, JJ., concur.