2 Ill. App.3d 745 (1971)
277 N.E.2d 337
DONALD L. VANCE, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF PEKIN COMMUNITY HIGH SCHOOL DISTRICT No. 303, Defendant-Appellee.
No. 71-32.
Illinois Appellate Court  Third District.
December 28, 1971.
Drach, Terrell & Deffenbaugh, of Springfield, (Robert W. Deffenbaugh, of counsel,) for appellant.
*746 Harold H. Kuhfuss, of Pekin, for appellee.
Judgment affirmed.
Mr. JUSTICE SCOTT delivered the opinion of the court:
This is an appeal from the circuit court of Tazewell County.
The plaintiff, Donald Vance, was 22 years of age when he graduated from Illinois State University in the month of June, 1969. Shortly thereafter he entered into a contract of employment as a teacher with the defendant, Board of Education of Pekin Community High School District #303. The contract provided that plaintiff would commence his teaching duties for the school term of 1969-70 on September 2, 1969. The plaintiff was to receive an annual salary of $6,800.00.
One paragraph of the contract contained the following language:
"It is further agreed that this contract is subject to the school laws of the State of Illinois, and to reasonable and lawful regulations of said Board of Education."
The plaintiff commenced teaching at Pekin Community High School on the designated contractural date of September 2, 1969. He taught courses in Economics and American Government. On September 29, 1969, the plaintiff was discharged from his teaching position by the defendant Board of Education.
The plaintiff subsequently filed a complaint against the defendant alleging breach of contract and that he was entitled to damages in the amount of his unpaid salary for the school year of 1969-70. The defendant's defense was that the plaintiff breached his contract by his actions and thereby there existed a legal right to terminate the plaintiff's employment. The trial court found the issues in favor of the defendant and this appeal stems from that decision.
The record discloses that during the short period the plaintiff taught in the Pekin Community High School a number of complaints were made against his methods of instruction and the type of discussions that were taking place in his classrooms. These complaints were made to a Mr. Holman, the school Superintendent, by parents, faculty members and school board members. Shortly after the plaintiff commenced his teaching duties the Student Council had under consideration a new constitution. A member of the Student Council gave the plaintiff a copy of the proposed constitution for the student body and after reading it he advised the members of his class that the document gave the students no voice in the operation of the school system. Members of the Student Council who were not enrolled as members of his classes were invited to attend such classes and further discussion ensued about the students having no voice in the operation of the school. For three days the plaintiff discussed with a large number of students the subject of "student power" *747 and how to achieve it. The plaintiff in discussing "student power" with his pupils and members of the Student Council who were present in his classroom stated that the only way to get anything changed was through demonstrations such as "walk outs." The record discloses that during this period of time when the plaintiff was disseminating such information there was considerable unrest among the student body and it culminated in an attempted walk out on the part of the students. There is no evidence, however, in the record that would support a finding that the plaintiff ordered the "walk out" or approved of it. However, never before in the school's history had such an atmosphere of unrest prevailed.
After receiving the complaints which we have mentioned regarding the plaintiff's teaching methods and type of discussions, the Superintendent, Mr. Holman, arranged for a conference with the plaintiff on September 23, 1969. In addition to Mr. Holman and the plaintiff this meeting was also attended by a Mr. Foote, who was the Assistant Superintendent of the school. After a discussion regarding the complaints which had been made against the plaintiff, Superintendent Holman then presented some written instructions to him and requested that he abide by them. Those instructions were as follows:
"I am informing you at this time that you are to cease the activities and statements that you admit to have been making, which encourage students to disrupt the educational activities of this school, that you will stop advising and teaching student to oppose the rules and policies of the school by the use of means other than through the established channels of student government, and that you will abide by the established policies and rules which apply to the professional staff.
"You are to leave school at this time to decide if you are willing to teach here under these conditions. You will report to my office at 8:00 tomorrow morning to give me your answer."
After receiving this written memorandum it was requested of the plaintiff that he verbally agree to abide by the instructions contained therein. The plaintiff requested that he be granted additional time to study the matter and further expressed a desire to consult with an attorney before arriving at a final decision. This request was granted and the plaintiff was given until September 25, at which time he was to reply to Superintendent Holman's request. This date, at the request of the plaintiff, was later extended to September 26. The memorandum of instructions presented to the plaintiff concerned his activities both during the classroom sessions and outside the classroom insofar as the school was concerned, but did not pertain to activities concerning his private life.
On September 29 the plaintiff appeared before the defendant Board of Education, at which time he presented the following statement:

*748 "I would like to start by apologizing for the inconvenience and difficulty I have caused the Board of Education and the School system, the Pekin system. The Pekin system was one of my first personal choices of the school I wanted to teach at and I do want to continue at Pekin High. I have, in the last few days, given the situation a considerable amount of thought and I am willing to conduct my classes according to the standards of the community and according to the conditions set down by the Administration which I have already agreed to. I am willing to cooperate with the Social Science Department, its' chairman and the Administration. I realize, as a beginning teacher I will and have made mistakes. I hope you, as board members, will take into consideration I am a beginning teacher and that I will and have made mistakes. I want to teach at Pekin High School and be a good teacher."
After making such statement the plaintiff was then asked by a Board member, if in the event the same situation were to arise at a later date involving his conduct and the teaching of his class, would he again do the same thing that he had done in the past? The plaintiff after some hesitation stated that he would and he was then dismissed from his teaching position by the defendant Board of Education.
The sole question presented for review is whether the defendant Board of Education acted capriciously, maliciously or arbitrarily in dismissing the plaintiff and thereby breached the contract of employment.
This case is not one involving an administrative review of the board's action, nor are we concerned with the teachers tenure law. We are only concerned with whether or not there has been a breach of a teaching contract by the defendant. The School Code of our state grants to school boards the power:
"To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause and to dismiss any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it * * *." (Chap. 122, Sec. 10-22.4, Ill. Rev. Stat.)
 1 It was specifically provided in plaintiff's contract of employment that the contract would be subject to the school laws of the State of Illinois. However, even if this proviso were absent our courts have held that the statutory provisions pertaining to the power of a school board to dismiss teachers automatically becomes part of the employment contract. (See Anderson v. Board of Education, 10 Ill. App.2d 63, 134 N.E.2d 28.) The statute in question, (Ill. Rev. Stat. ch. 122, par. 10-22.4) grants unto school boards great discretion when it states that the board may dismiss a teacher when in its opinion the interests of the school require it. The defendant in the case before us exercised its discretion by dismissing the *749 plaintiff because in its opinion the interests of the school required such dismissal. The question presented is when do our courts interfere with such an exercise of discretion. It has been uniformly held that the administration of schools is within the domain of the school board and the courts will not interfere with the the exercise of the board's power unless such exercise is shown to be capricious or arbitrary. Pickering v. Board of Education, 36 Ill.2d 568, 225 N.E.2d 1; Jepsen v. Board of Education, 19 Ill. App.2d 204, 153 N.E.2d 417; Muehle v. School Dist. No. 38, 344 Ill. App. 365, 100 N.E.2d 805.
 2 We are aware of the fact that our state Supreme Court was reversed by the United States Supreme Court in the Pickering case but the reversal was predicated upon constitutional grounds pertaining to the right of a teacher to exercise freedom of speech when it did not affect the internal operation of the school. Pickering still correctly sets forth the law as to when the courts will interfere with the exercise of a school board's power to dismiss a teacher and as we have stated, there will be no such interference by our courts unless the board has acted capriciously or arbitrarily.
 3 Following this well defined law we must determine whether or not defendant's action in dismissing plaintiff from his position was capricious or arbitrary. The record discloses that the board could have found from the evidence submitted that trouble and unrest in the Pekin school system resulted from the activities of the plaintiff. The advocacy in the classroom on the part of an instructor of teen-age students that there should be student power, demonstrations and walk outs could only lead to a deleterious effect on a school system. When complaints were received by the Superintendent as to the activities of plaintiff he arranged for a conference where the complained of matters could be discussed. The plaintiff at the conclusion of this meeting was requested to verbally agree that he would stop advising and teaching students to oppose the rules and policies of the school system. When the plaintiff requested time to think about his decision and to consult an attorney the additional time was granted. When a further request for additional time was made this request was also granted. The plaintiff was dismissed after having been granted a hearing before the defendant Board of Education and after he indicated that in the future under like circumstances he would conduct himself as he had in the past. There is nothing in the record to indicate to us malice on the part of defendant board members to the plaintiff, nor does it appear that the board's action was impulsive, capricious or malicious.
We cannot fail to note that the plaintiff himself acknowledged that he was causing trouble in the school. In his prepared statement to the board *750 he said: I would like to start by apologizing for the inconvenience and difficulty I have caused the Board of Education and the School system." True, that the plaintiff before the trial court testified that he did not admit to causing any difficulty but that he was merely expressing his regret for causing inconvenience to the school board. The plaintiff apparently overlooked or had forgotten that in his prepared statement his apology was not only to the board but to the school system as well. The apology for causing difficulty in the school was meaningless when the plaintiff shortly after tendering the same stated that under like circumstances in the future he would behave as he had done in the past. We would not be justified in finding that the board acted arbitrarily in dismissing him. The board could have reasonably concluded that failure to dismiss him might have resulted in a loss of control of the Pekin school system and its educational program.
Contrary to the argument of the plaintiff, who has cited a number of Federal cases, we find no constitutional questions presented in this case and therefore the law of our state as announced by our courts is controlling. See Rothschild & Co. v. Steger & Sons Piano Mfg. Co., 256 Ill. 196, 99 N.E. 920.
For the foregoing reasons we can only conclude that the defendant did not breach its contract with the plaintiff and therefore the judgment of the circuit court of Tazewell County is affirmed.
Judgment affirmed.
ALLOY, P.J., and DIXON, J., concur.