LAWRENCE B. JEFFERSON, Plaintiff-Appellee, *v.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellant.

First District (5th Division)    No. 78-1926

Opinion filed January 18, 1980.—Rehearing denied April 24, 1980.

Michael J. Murray, of Chicago (Richard E. Girard, of counsel), for appellant.

Ronald S. Cope, of Ancel, Glink, Diamond & Murphy, P. C., of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an action brought by Lawrence B. Jefferson, principal of the public school of the Cook County Jail and House of Corrections, seeking to recover additional compensation from the Board of Education of the City of Chicago (Board). The trial court granted Jefferson's motion for summary judgment and awarded him $14,835.96 in back salary. On appeal, the Board seeks reversal of the summary judgment, contending that the trial court erroneously interfered with the Board's statutory authority to establish Jefferson's salary. We reverse and remand.

The pertinent facts are not in dispute. Jefferson served as an assistant principal at the Industrial Skill Center from June 29, 1970, through January 30, 1972. Effective January 31, 1972, Jefferson was appointed principal of the public school at the Cook County Jail and House of Corrections, pursuant to Board Report 72-59-3, which was adopted by the Board on January 26, 1972.

Board Report 72-59-3 pertained specifically to Jefferson and provided in part:

> "Financial: In accordance with the provisions of Item 7 of Board Report 71-270, the Administrative Compensation Plan, adopted by the Board of Education on March 24, 1971, establish the salary of Mr. Lawrence B. Jefferson at the minimum of his respective administrative grade or grant Mr. Lawrence B. Jefferson an 8% increase in his present salary (six hour a day basis for teachers and including any administrative increment and vacation pay he is currently receiving) not to exceed the maximum of the third quartile, whichever is greater."

Item 7 of Board Report 71-270, the administrative compensation plan, reads in relevant part:

> "7. Effective September 1, 1971 when a member of the teaching force including principals and educational directors is promoted to a position of higher grade, his salary shall be increased to the minimum rate of the applicable range or up to 8% based upon the recommendation of the General Superintendent and the approval of the Board of Education, but not above the maximum rate of the third quartile of the higher grade. * * *."

The Board and the Chicago Teacher's Union had entered into an agreement, adopted as Board Resolution 71-185, which provided that the salaries of all teachers would be based on a six-hour day. Teachers in

vocational and trade schools work an eight-hour day and the agreement provides that they shall be paid "their basic salary plus 20 percent."

At the time of his promotion, Jefferson's basic salary was $1635.24 for a 20-day school month made up of six-hour days. He also received an additional 20 percent per month of his basic salary because he was assigned to a vocational school, plus $60 per month for his administrative duties as assistant principal.

In arriving at Jefferson's new salary, the Board used his six-hour basic salary without the additional 20 percent and added the $60 administrative increment. The basic monthly salary of $1695.24 was then multiplied by 12½ months, the number of four-week school months worked by a principal. Finally, that total was increased by 8 percent, to arrive at a total annual salary of $22,886. Jefferson claimed that the Board should have included the 20-percent trade school differential in arriving at his new salary, which therefore should have been $27,300.89. The trial court adopted Jefferson's position, finding that the Board should have followed the administrative compensation plan adopted in Board Report 71-270 and included the additional 20 percent in setting Jefferson's salary. Summary judgment was entered in Jefferson's favor, awarding him $14,835.96, the difference in salary resulting from the application of the formula urged by Jefferson. The Board has appealed.

OPINION

On appeal, the Board contends that it properly followed the six-hour-day basic salary formula in Board Report 72-59-3 in setting Jefferson's salary and that the trial court therefore interfered with the Board's statutory power to establish salaries for its employees. Jefferson, on the other hand, maintains that his appointment was purportedly in compliance with Board Report 71-270, which did not refer to the six-hour-day basic salary, and that the Board was bound to follow Board Report 71-270. We conclude that a genuine issue of fact remains as to whether the Board complied with existing policy in setting Jefferson's salary.

The Board's powers are found in article 34 of the Illinois School Code (Ill. Rev. Stat. 1977, ch. 122, pars. 34—1 through 34—128). Subject to limitations within article 34, the Board is given the power to prescribe "the duties, compensation and terms of employment of its employees" (Ill. Rev. Stat. 1977, ch. 122, par. 34—16) and to "employ teachers and other educational employees and fix their compensation." (Ill. Rev. Stat. 1977, ch. 122, par. 34—18.) The power to appoint principals is limited by section 34—8, which provides in pertinent part:

"* * * Appointments, promotions and transfers of teachers, principals, assistant and district superintendents and all other employees in the teaching force shall be made * * * by the board

only upon the recommendation of the general superintendent of schools or by a majority vote of the full membership of the board * * *." Ill. Rev. Stat. 1977, ch. 122, par. 34—8.

The essence of Jefferson's complaint is that, while the Board has the power to establish rates of compensation for principals, it has already done so in the administrative compensation plan, Board Report 71-270, which has the force of an ordinance and therefore cannot be amended with regard to a single person.

■■ Section 34—19 of the Illinois School Code (Ill. Rev. Stat. 1977, ch. 122, par. 34—19) provides that the bylaws, rules and regulations established by the Board "shall have the force of ordinances." It further provides that all bylaws, rules and regulations be enacted only at regular Board meetings by a vote of a majority of the full membership of the Board. The bylaws, rules and regulations may not be repealed, amended or added to except by a vote of two-thirds of the full membership of the Board. Board Report 71-270 is a report of part of the proceedings of a regular meeting of the Board. It records the Board's statement and adoption of policy in its administrative compensation plan. It was not designated or adopted as a bylaw, rule or regulation, and it is not included in the Board's official publications of its bylaws, rules and regulations. It therefore does not have the force of an ordinance.

■■ Jefferson maintains, nonetheless, that the Board is bound to follow that policy without exception. However, the numerous cases on which he relies offer no support for that proposition. *George v. City of Danville* (1943), 383 Ill. 454, 50 N.E.2d 467, *Kennedy v. City of Joliet* (1942), 380 Ill. 15, 41 N.E.2d 957, and *Anderson v. City of Jacksonville* (1942), 380 Ill. 44, 41 N.E.2d 956, are inapposite. All three cases involved public employment contracts which were held to be in violation of the State's policy because the salaries were below the statutory minimum. *Miller v. Board of Education* (1968), 98 Ill. App. 2d 305, 240 N.E.2d 471, is distinguishable in that it held that salary schedules, adopted during the time a teacher was not working because she was wrongfully discharged, constituted the measure of damages, although the teacher was not party to the teaching contracts during that time. While boards of education have been bound by their actions where a board regulation was incorporated in an employment contract (*Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 335 N.E.2d 600), and where a board had otherwise bound itself by contract (*Byerly v. Board of Education* (1978), 65 Ill. App. 3d 400, 382 N.E.2d 694), neither circumstance exists here.

In *Davis v. Board of Education* (1974), 19 Ill. App. 3d 644, 312 N.E.2d 335, the court held that a school board could create a salary distinction among tenured teachers based on the signing or failure to sign a new contract, but that the teachers could not be deprived of an annual

increment because they refused to sign the new contracts. Instead, their salary increment was to be based on the previous year's schedule. Contrary to Jefferson's contention, *Davis* does not lead to the conclusion that a board's policy must be strictly followed. The test in *Davis* was whether or not the Board's actions were arbitrary, capricious and unreasonable, and that test has been used to determine the propriety of a board's actions where it strictly followed promotion procedures it established by rule (*Sullivan v. Hannon* (1978), 58 Ill. App. 3d 572, 374 N.E.2d 911), as well as where it interpreted a discretionary policy. *Cohn v. Board of Education* (1970), 118 Ill. App. 2d 453, 254 N.E.2d 803.

In *Richards v. Board of Education* (1960), 21 Ill. 2d 104, 171 N.E.2d 37, the court stated that "it is clear that a school board has discretionary control over the salaries of its teachers, subject only to any limits expressly fixed by the School Code and to constitutional prohibitions against actions that are arbitrary, discriminatory and unreasonable, or based upon an improper classification." (21 Ill. 2d 104, 109, 171 N.E.2d 37, 41.) There being no conflict between the Board's action in adopting Board Report 72-59-3, the Board's bylaws, rules and regulations and the School Code itself, it remains to be determined whether the Board's action can be considered arbitrary, discriminatory or unreasonable. A change in salary, even if it is a reduction, is not of itself unreasonable, and has been upheld when a teacher who also served as principal was relieved of administrative duties. (*Lester v. Board of Education* (1967), 87 Ill. App. 2d 269, 230 N.E.2d 893.) Classifications of teachers according to their ability and level of educational achievement have similarly been upheld. See, *e.g., Richards v. Board of Education; Sullivan v. Hannon; Davis v. Board of Education.*

■ In the instant case Jefferson's salary as a teacher in a trade school included an additional 20 percent over the basic six-hour-day salary. An affidavit submitted by the Board in opposition to the motion for summary judgment indicates that the additional 20 percent was in the nature of overtime, because of the two additional hours per day required of trade school teachers. Jefferson contends that the basis for his salary as principal should have included the additional 20 percent. However, Jefferson conceded on oral argument that if a teacher from a regular six-hour-day program were appointed principal, even of a trade school, the six-hour basis would apply. Moreover, the record indicates that other teachers appointed as principals have had their salaries set at the six-hour basis, even if the result was a reduction in pay. Although it may appear reasonable to base an administrator's salary on his total previous salary, including overtime payments, the Board has obviously chosen to adhere to a salary formula based on position classification establishing principals' salaries on a six-hour daily basis. That formula is not unreasonable.

The Board is in the best position to interpret its own policies (*People ex rel. Cinquino v. Board of Education* (1967), 86 Ill. App. 2d 298, 230 N.E.2d 85), and its decision should be allowed to stand unless it is clearly erroneous or inconsistent with long-settled constructions. (See *Scheffki v. Board of Fire & Police Commissioners* (1974), 23 Ill. App. 3d 971, 320 N.E.2d 371.) The Board maintains that the policy of establishing all principals' salaries on a six-hour basis is a long-standing one that has been consistently applied. In support of its position, the Board relies on numerous Board reports which reflect the Board's policy on basic salaries.

■■ Preliminarily, we note that the Board has moved that we take judicial notice of Board Report 71-83 on appeal, pursuant to section 2 of "An Act in relation to judicial notice" (Ill. Rev. Stat. 1977, ch. 51, par. 48b) and section 34—19 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 34—19). Portions of Board Report 71-83 were contained in the Board's responses to interrogatories but the entire report was not made part of the record below. As submitted to this court in an appendix to the Board's brief, Board Report 71-83 was neither certified by the Board's secretary nor produced in book or pamphlet form as required by section 34—19 of the School Code. Accordingly, we will not take judicial notice of Board Report 71-83. The Board, on remand, may present its evidence in proper form.

■■ We turn now to the documents actually submitted to the trial court. Board Report 67349-C, adopted October 27, 1959, established the six-hour daily basis for setting salaries on promotion. Portions of Board Report 71-83, adopted February 3, 1971, as well as the 1971 contract between the Board and the teachers, adopted as Board Report 71-185, refer to the six-hour basis for all teachers and the 20-percent differential for trade school teachers. Board Report 71-270 contains no reference to the six-hour basis for promotions, although it appears that the Board still set salaries for principals according to the six-hour basis without including the 20 percent overtime. The six-hour basis language was restored on January 24, 1974, in Board Report 74-469-7. Although the subsequent reinstatement of the language may indicate that its omission in 71-270 was merely an oversight (*Carey v. Elrod* (1971), 49 Ill. 2d 464, 275 N.E.2d 367, *appeal dismissed* (1972), 408 U.S. 901, 33 L. Ed. 2d 327, 92 S. Ct. 2488; *People v. Hudson* (1970), 46 Ill. 2d 177, 263 N.E.2d 473; *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 242 N.E.2d 267), the later action of the Board is only relevant if the Board has consistently applied the six-hour basis formula, notwithstanding its omission from Board Report 71-270. Because it is disputed that the Board has been consistent in its actions, a full evidentiary hearing on that issue is necessary.

A party is entitled to summary judgment if the pleadings, depositions, admissions on file and affidavits disclose no genuine issue of

material fact. (Ill. Rev. Stat. 1977, ch. 110, par. 57(3); *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) Whether the Board applied its salary policy consistently is a material factual issue and the entry of summary judgment was therefore improper. Accordingly, we reverse the judgment of the trial court and remand the cause for further proceedings not inconsistent with this opinion.

Judgment reversed; cause remanded.

SULLIVAN, P. J., and WILSON, J., concur.