STEVE TYSKA, a Minor, by Frank Tyska, his Father, and Next Friend, *et al.*, Plaintiffs-Appellees, *v.* BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 214, COOK COUNTY, *et al.*, Defendants-Appellants.

First District (5th Division)   No. 83—1283

Opinion filed August 31, 1983.

Ralph Miller and Allyn J. Franke, both of Brydges, Riseborough, Morris, Franke and Miller, of Chicago, for appellants.

Gerald J. Brooks and Heidi H. Katz, both of Fawell, James and Brooks, of Naperville, for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Defendant, the Board of Education of Township High School District 214 (the Board), appeals from a judgment which declared that the Board's May 17, 1982, decision to close Arlington High School (Arlington) and to assign incoming freshmen to its other high schools was null and void, and enjoined implementation of the closing and mandated reassignment of the students in the area to Arlington as freshmen in the school year 1983-84 with necessary staff and services. We reverse. The pertinent facts are as follows.

Plaintiffs are two students, three resident taxpayers of School District 214, and a not-for-profit corporation formed August 10, 1982, to promote education in the Arlington and surrounding area. Defendants are the Board and School District 214, who operate eight four-year high schools in Elk Grove and Wheeling Townships in Cook County, Illinois. Arlington High School was the first facility in District 214 and has an enrollment of approximately 1,500 students.

In April 1981 defendant Board, mindful of decreasing enrollment and increasing cost, determined that if enrollment continued to decline it would be necessary to close one or more of the eight high schools within District 214. At that time the Board assigned to its Planning Steering Committee (PSC) the duty of developing criteria to be used in selecting schools which would cease to function as comprehensive high schools in 1983-84 and 1985-86. Pursuant to a PSC recommendation that it involve the community in the criteria selection process, the Board, on September 14, 1981, empaneled three 40-member committees composed, respectively, of students of the eight high schools, citizens residing within District 214 and faculty and staff from the eight schools. The committees were instructed by the Board to identify and rank order the criteria to be used in determining which buildings would remain comprehensive high schools and to sub-

mit to the Board a written report with their recommendations for weighting of the criteria. The Board members did not participate in the meetings or deliberations of the committees. On November 9, 1981, each committee submitted to the Board a list of 12 criteria. At a public hearing on November 16, 1981, the Board solicited additional public opinion regarding the development of criteria for school closures. The Board limited the scope of the hearing to consideration of school closing criteria and declined to hear comments regarding individual schools.

The PSC consolidated the committees' criteria and recommended to the Board a final list of 12 criteria. The views of additional community members were elicited at a subsequent public hearing. At its December 14, 1981, meeting, the Board, with each of its members concurring, voted to adopt the School Consolidation Criteria. The preamble to the list of criteria states, in pertinent part: "The Board must soon make a decision. *** If the decision is to reduce the number of full facilities, then steps will have to be taken to determine which buildings should cease to function as comprehensive high schools and when. To this end, the following list of criteria has been selected." The list which followed recommended retaining those schools which: (1) accommodate the most complete selection of programs for students; (2) have the lowest operating and maintenance costs; (3) will require the lowest expenditure for major maintenance, renovation and improvement; (4) minimize the number of students bused, the length of the bus ride, and the cost of busing; (5) are located in the areas with the largest potential for growth in student enrollment; (6) are least desirable for alternative use by District 214; (7) meet the government requirements for the physically handicapped; (8) minimize the number of students who have to transfer schools; (9) are least likely to be sold or leased to other organizations; (10) minimize the number of feeder elementary districts which feed into any individual high school; (11) are within close proximity to supportive services and facilities; and (12) serve the greatest need for community-based programs.

During the early months of 1982 the Board's administrative staff gathered and analyzed data relating to each of the 12 criteria, and the Board engaged a consulting firm to prepare demographic statistics and analyses based upon the 1980 census figures. On April 27, 1982, the Board received a report combining the demographic data derived from census reports with other factual information compiled by the administrative staff, including a weighting and ranking of the eight schools according to the 12 criteria. The report indicated that

Arlington High School was the third least appropriate candidate for closing. The Board then instructed that certain of the criteria be reanalyzed regarding the three schools serving the earliest developed portions of the district—Arlington, John Hersey and Prospect High Schools. On May 3 the Board met and reviewed the revised report which ranked the schools as follows, with the least appropriate candidate for closing indicated by the highest score:

Prospect High School    - 653 points
Arlington High School    - 635 points
John Hersey High School - 565 points

Board members commented on the revised report and raised certain issues for additional research by the administrative staff and each Board member personally inspected each of the eight schools. At the May 17, 1982, meeting Board members received follow-up reports containing information relating to the concerns raised at the May 3 meeting. A motion to close Hersey High School in accordance with the May 3 revised report ranking it the most appropriate school for closing was defeated on a 5-2 vote. A motion to close Arlington High School then carried 5-2. The minutes of the meeting include a prepared statement from each Board member explaining his or her vote.

Plaintiff on November 17, 1982, filed the instant complaint in two counts. Count I alleged that the defendants created an illusion that the adopted criteria would be justly followed in selecting the school for closing; that they ignored the criteria in reaching their decision; that the decision to close Arlington was arbitrary and capricious; and prayed that the decision and actions of the defendants be declared null and void. Count II additionally alleged that immediate and irreparable injury will be done to plaintiffs and others and prayed that defendants be temporarily and permanently enjoined from closing Arlington.

The Board filed an answer admitting the steps leading to adoption of the criteria on December 14, 1981, without ranking or weighting, asserting that the criteria were never considered binding or as a mandate, but only as standards or norms; further stating that the report received April 27, 1982, from its employee was merely received; and that ultimately each Board member made personal individual judgments not necessarily governed by weights or rankings in any report. The answer denied any alleged injury. As an affirmative defense, defendant alleged that the elected members are charged with the duties and powers in the decision made by the Board. It denied that plaintiffs were entitled to any relief and sought judgment for defendants.

At trial, the court received depositions, documents and trial memoranda. Witnesses were presented by each of the parties, including the testimony of each of the Board members. The trial court entered a written decision which included a summary of the case, stating, *inter alia*, "The record does not establish that the defendant Board ever adopted the criteria previously mentioned as rules to be applied in reaching a final conclusion *** that twelve criteria were not followed *** in its final decision process. *** a Board or 'body' acts arbitrarily when [it] fails to either follow rules or criteria that it led the public to believe it would follow, or when it fails to make findings of fact as to why it did not. *** Nevertheless, the court concludes that the establishment of criteria by a School Board, albeit for guidance or information only, compels a School District to either follow that criteria or give reasons in their decision as to why the criteria were not followed. *** The court finds that their failure to do so in this case resulted in arbitrary action."

The court in the judgment order portion then made findings, *inter alia*, that defendants did in fact devise a procedure to follow in preparing to select a school for closing, by authorizing, on December 14, 1981, a set of criteria to serve as an objective standard against which candidate schools for closing were to be measured, and that the evidence shows that defendants disregarded the results. It then ordered that the decision of May 17, 1982, to close Arlington is arbitrary and capricious and null and void; and that defendants are enjoined from assigning current eighth grade students in Arlington attendance areas to other high schools and shall reassign them to Arlington and provide necessary staff and services to educate them as freshmen in the school year 1983-84.

OPINION

I

On appeal, defendants articulate several issues. We find, however, that we need consider only whether the Board's decision to close Arlington High School and to reassign certain students was rendered void by reason of its failure to apply strictly the criteria which had been developed for the purposes of such decision.

It is significant, as noted by the trial court, that no one disputes the need of the Board to consolidate and close schools nor the power and duty of the Board to close schools in light of declining enrollment when there is no foreseeable change in the decline. Basically, the opening and closing of schools is a quasi-legislative function delegated

to the Board by the legislature. The actions by the Board in the instant case were taken pursuant to the provisions of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 1—1 *et seq.*), under which a school board has the duty to establish attendance units within the district (Ill. Rev. Stat. 1981, ch. 122, par. 10—21.3), and the power to assign pupils to the schools in the district (Ill. Rev. Stat. 1981, ch. 122, par. 10—22.5), to control and supervise all public school houses in its district (Ill. Rev. Stat. 1981, ch. 122, par. 10—22.10), and to decide when a site or building has become unnecessary, unsuitable or inconvenient for a school (Ill. Rev. Stat. 1981, ch. 122, par. 10—22.13). The powers granted by the School Code here are discretionary unto itself and may not be delegated. (*Board of Education v. Chicago Teachers Union Local 1* (1981), 88 Ill. 2d 63, 430 N.E.2d 1111.) The legislature has placed the administration of schools within the domain of the school board and courts will not interfere with the exercise of the board's powers unless such exercise is shown to be arbitrary or capricious. *Pickering v. Board of Education* (1967), 36 Ill. 2d 568, 225 N.E.2d 1, *rev'd on other grounds* (1968), 391 U.S. 563, 20 L. Ed. 2d 811, 88 S. Ct. 1731; *Vance v. Board of Education* (1971), 2 Ill. App. 3d 745, 277 N.E.2d 337.

Where the legislature has empowered a school board to perform certain functions, the courts will not interfere with the exercise of such powers or substitute their discretion for that of the school board unless the board's action is palpably arbitrary, unreasonable or capricious. *Herbach v. Board of Education* (1981), 94 Ill. App. 3d 889, 419 N.E.2d 456; see *Richards v. Board of Education* (1960), 21 Ill. 2d 104, 171 N.E.2d 37.

In the instant case, the trial court voided the decision of the Board and found that a "board or 'body' acts arbitrarily when it fails to either follow rules or criteria that it led the public to believe it would follow, or when it fails to make findings of fact as to why it did not." From the language of the statute it is clear that the legislature has vested in the school board discretionary control over school closings. "Discretion" has been defined as follows: "Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed. But when a positive duty is enjoined, and there is but one way in which it can be performed lawfully, then there is no discretion." (*Elder v. Anderson* (1962), 205 Cal. App. 2d 326, 331, 23 Cal. Rptr. 48, 51; *Blalock v. Johnston* (1936), 180 S.C. 40, 48, 185 S.E. 51, 54.) Plaintiffs' contentions in the instant

case would improperly abrogate and deprive the Board of the discretion vested in it.

A school board has a wide discretion in the exercise of its powers (*People ex rel. McCollum v. Board of Education* (1947), 396 Ill. 14, 71 N.E.2d 161, *rev'd on other grounds* (1948), 333 U.S. 203, 92 L. Ed. 649, 68 S. Ct. 461), and it may neither delegate to another nor otherwise limit the discretionary powers vested in it by statute. (*Illinois Education Association Local Community High School District 218 v. Board of Education* (1975), 62 Ill. 2d 127, 340 N.E.2d 7; *Board of Trustees v. Cook County College Teachers Union Local 1600* (1976), 62 Ill. 2d 470, 343 N.E.2d 473). There is nothing in the statute which authorizes a school board to delegate its responsibilities and duties in administering a school district to an advisory committee. (*Quality Education For All Children, Inc. v. School Board* (N.D. Ill. 1974), 385 F. Supp. 803.) We find, therefore, that the Board acted within its discretion in the instant matter and conclude that to require a strict application of the criteria prepared by the several committees would impermissibly subordinate or limit the discretionary powers vested in the Board by the legislature.

Plaintiffs here urge that the adoption of the criteria was not an improper subordination of the Board's powers but rather that the criteria became a rule by which the Board was bound. Section 10—20.5 of the School Code provides that it is a duty of the school board to adopt and enforce all necessary rules for the management and government of the public schools in its district. Rules adopted by the school board are to be filed for public inspection in the administrative office of the district. (Ill. Rev. Stat. 1981, ch. 122, par. 10—20.5.) A school board is bound to act in accordance with the rules and regulations it has made pursuant to statutory authority (*Sullivan v. Hannon* (1978), 58 Ill. App. 3d 572, 374 N.E.2d 911); such rules have the force of law. *Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 335 N.E.2d 600.

Not every interpretation by an agency has the status of a rule or regulation, however. (*Sullivan v. United States* (1954), 348 U.S. 170, 99 L. Ed. 210, 75 S. Ct. 182.) In *Sullivan v. United States* certain criminal indictments were claimed to be faulty because they were not obtained in accordance with procedures outlined in an executive order and in a circular letter of the Department of Justice. The Supreme Court in upholding the indictment stated that "[i]t was not the purpose of the Executive Order to direct how the responsibility should be exercised but to fix it in the Department of Justice. *** To make the system uniform, Circular Letter No. 2431 was sent to all District At-

torneys. It was never promulgated as a regulation of the Department and published in the Federal Register. It was simply a housekeeping provision of the Department and was not intended to curtail or limit the well-recognized power of the grand jury ***." 348 U.S. 170, 173, 99 L. Ed. 210, 216, 75 S. Ct. 182, 184.

In *Jefferson v. Board of Education* (1980), 82 Ill. App. 3d 877, 403 N.E.2d 486, this court considered a certain report "adopted by the [school] board" which was a part of the proceedings of a regular meeting and recorded the school board's statement and adoption of policy. However, we held that the report had not attained the status of a bylaw, rule or regulation, because it had not been designated or adopted as such and was not included in the official publication of its bylaws, rules and regulations. 82 Ill. App. 3d 877, 881, 403 N.E.2d 486, 488.

The term "criterion" (plural: criteria) has been defined as "a standard on which a decision or judgment may be based; a standard of reference; a basis for discrimination" (Webster's Third New International Dictionary 538 (1966) and such definition is commonly accepted. An examination of the minutes of the Board reveals that the Board adopted the criteria as such a standard or guideline, not as a "rule" by which it would be bound. The minutes of the November 23, 1981, Board meeting state that "[m]embers discussed the term 'criteria' and there was agreement that a criterion should be something that can be utilized as a measure to aid in the making of rational choices." That the Board did not intend to be bound or limited by the criteria but adopted them only as a standard or measuring device is further illustrated by the November 30, 1981, minutes of the Board which state that "[t]he Board will also develop a list of principles *** which will be kept in mind as the criterioin [*sic*] are applied to the respective schools." As a further indication that the criteria were only a guideline, we note that many of the provisions are couched in vague or general terms requiring a purely subjective judgment. Furthermore, at the time of adoption by the Board, the criteria had not yet been weighted. Thus, the criteria were incomplete in that they could not then be applied to the collected data to determine objectively which school was more appropriate for closure and, therefore, could not have been adopted as a "rule," the strict application of which would lead to an objective determination.

■ The Board's preamble to the criteria indicates that on December 14, 1981, when the criteria were purportedly adopted as a rule, the Board had not firmly decided that *any* school would be closed. It is unreasonable to conclude therefrom that the Board would so bind

itself when there existed only a possibility of having to close a school. The record fails to show that the criteria were designated as a rule or regulation and plaintiffs have presented no evidence showing that the criteria were filed for public inspection as required by statute. (Ill. Rev. Stat. 1981, ch. 122, par. 10—20.5; see *Jefferson*.) It is our opinion that the criteria in the case at bar, similar to the executive order and departmental letter in *Sullivan v. United States* (1954), 348 U.S. 170, 99 L. Ed. 210, 75 S. Ct. 182, were only a housekeeping provision of the school board to reach a determination, and not in themselves a final rule, determination or mandate. They therefore should not be construed to curtail or otherwise limit the discretionary power of the Board to ultimately reach a decision to close Arlington High School and to consolidate the attendance areas. (See *Potter v. School Directors* (1974), 17 Ill. App. 3d 781, 309 N.E.2d 58.) The trial court properly concluded that the record does not establish that the Board ever adopted the criteria as mandatory rules to be applied in reaching its final decision as to which school should be closed. However, since the criteria were not a rule or mandate to be strictly followed, we find upon a review of the record that the Board retained its full discretionary powers. Accordingly, the trial court erred in concluding that the failure to follow the criteria was arbitrary and capricious.

II

Defendants contend that the trial court erred in holding that the Board was arbitrary in failing to make findings of fact or reasons as to why it did not follow the criteria. Plaintiffs respond that since the statute lacks guidelines for the exercise by the Board of the power to close a school when necessary that the trial court "sensibly" applied basic principles of administrative law. We must therefore examine the necessity for a finding of fact or reasons by the Board as a basis for the exercise of its power to close a school and reassign students to other schools within the district.

The constitutional duty of the State to provide and the right of the public to receive an efficient high-quality educational system (Ill. Const. 1970, art. X, sec. 1) is discharged by the State through local boards of education which are primarily responsible for fulfilling the constitutional mandate. (*Allen v. Maurer* (1972), 6 Ill. App. 3d 633, 640, 286 N.E.2d 135; *Potter v. School Directors* (1974), 17 Ill. App. 3d 781, 309 N.E.2d 58.) The authority to establish and maintain our system of free schools has of practical necessity been properly delegated by the General Assembly to the electorate of the several school districts, and their duly-elected school boards, because the General As-

sembly could not conveniently or efficiently attend to the details of establishing, maintaining, and operating our public schools, which include high schools as well as elementary and grade schools. *Smith v. Board of Education* (1950), 405 Ill. 143, 147, 89 N.E.2d 893.

A board of education is a corporation or quasi-corporation (*People v. Furman* (1962), 26 Ill. 2d 334, 186 N.E.2d 262) analogous to other municipal corporations (*People v. Deatherage* (1948), 401 Ill. 25, 81 N.E.2d 581), created by general laws of the State to aid in the administration of the State government, and charged, as such, with duties purely governmental in character. (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 187 N.E.2d 722.) To be thorough and efficient, school operations cannot depend upon the choice or whim of others, but must necessarily be controlled only by duly-constituted and qualified school officials. *Board of Education v. Redding* (1965), 32 Ill. 2d 567, 573, 207 N.E.2d 427; *Allen v. Maurer* (1972), 6 Ill. App. 3d 633, 286 N.E.2d 135.

Section 10—2 of the School Code provides that the directors of each district shall be a body politic and corporate; sections 10—20 and 10—21, that the board has the duties enumerated, including section 10—21.3, to establish one or more attendance units within the district; section 10—22.5, to assign pupils to the several schools; section 10—22.10, to have control and supervision of all school houses in their district; and section 10—22.13, to decide when a site or building has become unnecessary, unsuitable or inconvenient for a school. (Ill. Rev. Stat. 1981, ch. 122, pars. 10—2, 10—20, 10—21, 10—21.3, 10—22.5, 10—22.10, 10—22.13.) Moreover, the members of the Board have broad discretion in the use of those powers within the limits of the grant. (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 187 N.E.2d 722.) Nowhere do we find any expression by the legislature that any findings or reasons are necessary or must be provided by the Board nor any other statutory conditions or limitation for the exercise of the foregoing powers.

The trial court and plaintiffs rely upon *Dunlop v. Bachowski* (1975), 421 U.S. 560, 44 L. Ed. 2d 377, 95 S. Ct. 1851, in which Bachowski, a defeated candidate for union election, filed a complaint with the United States Secretary of Labor alleging violations of a Federal statute. The statute required the Secretary to investigate the complaint (29 U.S.C. sec. 481 (1976)) and to determine whether he had probable cause to believe that a violation occurred and whether he should bring a civil action to set aside the election. The Secretary, whose investigation disclosed various violations, decided that action was not warranted and so advised Bachowski by letter which the

court found may have sufficed as a brief statement of the grounds for denial for purposes of the Administrative Procedure Act (5 U.S.C. sec. 555(e) (1976)) but did not suffice as a statement of reasons required by the labor statute (29 U.S.C. sec. 481 (1976)) which specifically prescribed the Secretary's duties. Such statement was deemed necessary to enable an intelligent judicial review and to supply complainant with reasons for the adverse determination. However, it appears clear that the Secretary was exercising a quasi-judicial rather than a quasi-legislative duty as in the instant case. Significantly, Justice Rehnquist, concurring in part and dissenting in part, observed that independent of any connection with judicial review a statement of reason is required by statute of the grounds for denial by the Administrative Procedure Act. (5 U.S.C. sec. 555(e) (1976); *Dunlop v. Bachowski* (1975), 421 U.S. 560, 593, 44 L. Ed. 2d 377, 401, 95 S. Ct. 1851, 1870.) We find *Dunlop* is inapposite and neither applicable nor persuasive.

■ The decision to close a school and to reassign the students to other attendance zones within the district is an exercise of the discretionary powers granted to the Board to act as a policy-making body, tantamount to the quasi-legislative power to make prospective regulations and orders. (See *Environmental Protection Agency v. Pollution Control Board* (1981), 86 Ill. 2d 390, 427 N.E.2d 162.) The decision involves a public policy question concerning the school system and the district as a whole, and not an adversarial adjudication of the rights of individuals. A school board's restructuring and determination of high school attendance zones within the school district is a quasi-legislative function. As such, the views of individuals presented to the Board at the public hearings were in the context of a town meeting and not evidence in a judicial sense. *Polk v. School Board* (Fla. App. 1979), 373 S.2d 960.

A board of education in the exercise of its discretionary powers may discontinue or abandon the use of a public school within the boundaries of its jurisdiction and assign the students thereof to other schools in the school system; the board must be able to act in a reasonable manner consistent with the public interest. (*Silverman v. Board of Education* (1975), 134 N.J. Super, 253, 339 A.2d 233; *Brooks v. Shannon* (1939), 184 Okla. 255, 86 P.2d 792.) In *Brooks* the court held that the board may act within its powers without the need of making any finding of the reason or necessity which induces the exercise of its discretion, because the law commits the government and conduct of the schools in general to the board of the district and places it beyond that of the patrons. No statement or finding that

public benefit will be served is required where a legislative function is being performed by an administrative agency. (*Karlson v. City of Camarillo* (1980), 100 Cal. App. 3d 789, 808, 161 Cal. Rptr. 260, 271.) In *City of Santa Cruz v. Local Agency Formation Com.* (1978), 76 Cal. App. 3d 381, 389, 142 Cal. Rptr. 873, 878, the court stated that written findings of fact are customarily required in quasi-judicial or judicial proceedings, for in such context the individual rights of persons are involved; however, no statute or authority requires such findings in quasi-legislative or legislative determinations which involve an exercise of discretion governed by considerations of the public welfare. The court concluded that "[w]ritten findings of fact are alien to legislative procedures, for no person has a *right* to the adoption of legislation."

No statutory judicial review of the powers in the instant case is provided. Neither the Administrative Review Act (Ill. Rev. Stat. 1981, ch. 110, par. 264 *et seq.*), now the Administrative Review Law (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*), nor the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1981, ch. 127, par. 1001 *et seq.*) is here made applicable. The School Code does not require the Board to make written findings or reasons in support of its decision in the exercise of the powers in this case. Our supreme court has held that the principal reason given for requiring written findings by an administrative agency, in the absence of statutory command, is that they are necessary for orderly and efficient review; where the administrative decision is not subject to judicial review, however, there appears to be no substantial reason for requiring written findings in the absence of legislative requirement. (*Telcser v. Holzman* (1964), 31 Ill. 2d 332, 338, 201 N.E.2d 370.) We find the foregoing principles to apply in this case. In the absence of a statute or rule requiring an administrative board to make detailed findings of fact, none are required. *Justice v. City of Casa Grande* (Ariz. App. 1977), 116 Ariz. 66, 68, 567 P.2d 1195, 1197.

The admonition in *Grocery Manufacturers of America, Inc. v. Department of Public Health* (1979), 379 Mass. 70, 393 N.E.2d 881, is here applicable. Plaintiff (GMA) there challenged a food-labeling regulation for failure to include in the agency's record a statement of the legislative facts supporting the regulation. In rejecting the contention, the court stated:

> "There is no such requirement in the law of the Commonwealth. '[F]or the court to check back on the agency's "reasons" and "determination[s]" of fact and law would have an unhealthy tendency to substitute the court for the agency as

policymaker.' [Citation.] The GMA's reliance on cases decided under the Federal Administrative Procedure Act is misplaced because this State's Administrative Procedure Act (G. L. c. 30A) does not require agency findings of legislative facts in the record in a regulatory proceeding. Compare 5 U.S.C. sec. 553(c) (1976) with G.L. c. 30A, sec. 2. The United States Supreme Court has recently held that a reviewing court should not impose procedural requirements on administrative agencies in addition to those imposed by Congress. *Vermont Yankees Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524-525, 98 S. Ct. 1197, 55 L. Ed. 2d 460 (1978). We have recently stated that 'the approach of a court to an agency regulation is as deferential as that to a legislative enactment.' *Greenleaf Fin. Co. v. Small Loans Regulatory Bd.* [377] Mass. [282], [293], 385 N.E.2d 1364, 1371 (1979)." 379 Mass. 70, 79-80, 393 N.E.2d 881, 889.

No one here challenges the need to close one of the high schools because of declining enrollment nor the power of the Board to effect such closing. Likewise there is no suggestion of a failure of any school board member to act in what he or she in his or her judgment and discretion felt was in the best interest of the schools; their good faith or motives have not been questioned. The official records of the Board disclose that each of the members at its meeting of May 17, 1982, read individual statements concerning his or her vote on the question of closing Arlington. The statements were then appended and made a part of the minutes. The School Code does not require the taking of testimony or evidence or any public hearings as a condition or prerequisite to the Board's exercise of the statutory powers here involved. The subject had been under discussion before the Board for a considerable period of time during which citizens and various committees were permitted to express their views at public meetings. However, no evidence or testimony was taken by the Board in a judicial sense and the views presented from the audience were in the context of a town meeting as characterized in *Polk v. School Board* (Fla. App. 1979), 373 S.2d 960. Moreover, the record shows that the Board officially considered various criteria and standards relative to their decision-making process and made personal inspections and tours of the schools of the system for the purpose of reaching the decision. It must be recognized that the voters of the school district have elected the Board to formulate and execute the educational policies for the district. The Board must be able to act in a reasonable manner consistent with the public interest in order to carry out its delegated

duty to provide an efficient, high-quality educational system. Since the Board is primarily responsible for fulfilling the constitutional mandate, thorough and efficient school operations cannot depend upon the choice or whim of others. It is not for the courts to determine whether or not the means ultimately adopted by the Board are wise or expedient nor to interfere with the exercise of the powers by the members of the Board in matters confided to their discretion. If the opinion of the court or others is to be substituted for the judgment and discretion of the Board at the insistance of a disaffected student or taxpayer, the government and management of our schools will be seriously impaired and the position of school boards in dealing with such cases will be most precarious. The vote of the Board was recorded as being five members in favor and two members opposed to the adoption of the action to close Arlington. The proponents and the opponents had had their say. We cannot question the wisdom of the final action. Right or wrong it is the decision of the Board adopted as a quasi-legislative function within its powers. Inasmuch as a statement of reason or finding of facts is not required, it was error to therefrom conclude that the Board therein acted arbitrarily, capriciously or unreasonably and that the ultimate action was null and void. Upon review of the entire record, we are unable to say that the ultimate decision itself, the decision to close Arlington and reassign the freshmen students, was so palpably arbitrary, capricious or unreasonable as to render it null and void.

## III

Plaintiffs concede that the trial court's decision does not rely upon estoppel but here suggest that the doctrine may provide an alternative ground for sustaining the ruling of the trial court. Equitable estoppel has been defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights which might otherwise have existed as against another party who has relied in good faith upon such conduct and has been led thereby to change his position for the worse. *Willowbrook Development Corp. v. Pollution Control Board* (1981), 92 Ill. App. 3d 1074, 416 N.E.2d 385.

The doctrine of estoppel may be applied against school boards or districts as well as against other municipal bodies. (*Webster v. Toulon Township High School District No. 4* (1924), 313 Ill. 541, 145 N.E. 118; *Pioneer Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414, 444 N.E.2d 211; *Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 230 N.E.2d 465.) The doctrine may be applied even against the State when acting in a governmental ca-

pacity, but only under compelling circumstances. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 17 L. Ed. 2d 806, 87 S. Ct. 957; *People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 286 N.E.2d 524.) Whether estoppel may be applied in a given case is determined from a consideration of all the circumstances of the case. (*Stahelin.*) Although the application of equitable estoppel against a public body is generally disfavored and should not be invoked except in rare and unusual circumstances (*Ponton v. Illinois State Board of Education* (1978), 62 Ill. App. 3d 907, 909, 379 N.E.2d 1277), the doctrine may be applied where, under all the facts and circumstances, the acts of the public body have created a situation where it would be inequitable or unjust to permit it to negate what it has done or permitted to be done. *Pioneer Processing, Inc.; Stahelin; City of Quincy v. Sturhahn* (1960), 18 Ill. 2d 604, 165 N.E.2d 271.

An essential element of equitable estoppel is that, in reliance on the representation of another, the party asserting the estoppel must have done or omitted some act or altered his position in such a way that he would be injured if the other person is not held to the representation on which the estoppel is predicated. *Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 334 N.E.2d 810.

In *Webster v. Toulon Township High School District No. 4* (1924), 313 Ill. 541, 145 N.E. 118, cited by plaintiffs, the voters and taxpayers relying on the statements and conduct of school district officials refrained from voting on the issuance of certain bonds. The voters asserted that they were induced to believe they would never have to pay, and that the bonds would not have come into existence if they had not been induced to refrain from voting. The court found that the voters had changed their position and had been injured in relying on the officials' statements and conduct and accordingly held estoppel to be applicable. In *In re Petition To Disconnect Certain Territory* (1961), 30 Ill. App. 2d 336, 174 N.E.2d 574, petitioners who were voters and the land owner of record were persuaded by a city official to delay in exercising their right to disconnect specified property from the city. During the period of the delay the city annexed certain property whereby petitioners were prevented from meeting the statutory requirements for disconnecting. The court found that petitioners had been induced to alter their position to their detriment and upheld their assertion that estoppel applied.

■ Plaintiffs here assert that the Board represented that it would utilize the school closing criteria and act in accordance with the

results obtained therefrom in making an objective determination of which school to close, and that they relied on such representation and were thereby induced to refrain from presenting to the Board arguments in opposition to the closing of Arlington High School and from actively campaigning for their special interest. Plaintiffs contend that their nonaction constituted a waiver of their constitutional right to petition government for a redress of grievances (see U.S. Const., amend. I; Ill. Const. 1970, art. I, sec. 5) and that such waiver constituted a substantial loss sufficient to estop the Board from refusing to follow the school closing criteria.

Plaintiffs have, however, failed to establish that they relied to their detriment or that they in any way changed their position for the worse as a result of the Board's representations. Responsibility for determining when a school has become unnecessary is vested by statute in the school board (Ill. Rev. Stat. 1981, ch. 122, par. 10—22.13), and there are no statutory procedures which must be followed in the exercise of that power which is discretionary and may not be delegated. (*Cf. Board of Education v. Chicago Teachers Union, Local 1* (1981), 88 Ill. 2d 63, 430 N.E.2d 1111.) Plaintiffs concede that the Board had no duty to involve the community in its decision and, in fact, could have selected a school for closure in any manner had it not "adopted the criteria." The Board was not bound to consider any testimony or evidence from plaintiffs or other community members. The residents of a school district have no protectible interest invested in the integrity of the boundary lines separating attendance centers, nor any proprietary interest in the administrative determination of attendance centers within a school district. (*Potter v. School Directors* (1974), 17 Ill. App. 3d 781, 309 N.E.2d 58.) Unlike the parties who invoked estoppel in *Webster* and *City of Palos Heights*, plaintiffs herein were not induced to forego the exercise of an express statutory right. Although plaintiffs refer to certain constitutional rights, their contention here is that they were deprived of the opportunity "to present evidence to dispel important false assumptions, on the Board's part, about the continued viability of Arlington; to publicly confront the Board's bias in the event it was not willing to have those assumptions dispelled; and to gather support within their community, via petition drives and other means." Plaintiffs, however, had no statutory right to participate in the making of the Board's decision and therefore suffered no loss thereof by being precluded from such further participation or opportunity. Plaintiffs have not established a substantial detriment or loss necessary to invoke the doctrine of equitable estoppel.

For the reasons stated, the judgment of the trial court declaring the Board's decision of May 17, 1982, null and void, enjoining implementation, and mandating reassignment of students to Arlington with necessary staff and services is reversed.

Reversed.

WILSON, P.J., and LORENZ, J., concur.